LAYTON *v.* STATE OF INDIANA.

[No. 268S33. Filed September 27, 1968.]

*Bob Good, Donald L. Brunner* and *Brunner, Brown & Brunner,* of counsel, all of Shelbyville, for appellant.

*John J. Dillon,* Attorney General, *Douglas B. McFadden,* Assistant Attorney General, and *Rex P. Killian,* Deputy Attorney General, for appellee.

ARTERBURN, J.—This is the second appeal for the appellant, Michael Walton Layton. (See *Layton* v. *State* (1966), 248 Ind. 52, 221 N. E. 2d 881.) He was originally charged in Count One with first degree (premeditated) murder and in Count Two with murder while engaged in the perpetration of a robbery occurring on September 22, 1960. At the conclusion of the first trial in 1961, the jury returned a verdict of guilty on both counts, and fixed the punishment on both counts as imprisonment in the State Prison during life.

The appellant thereafter asked for a new trial which was overruled by the trial court and from which ruling an appeal was taken. Thereafter this Court, because of the admission of certain evidence of other offenses (including the "robbery of a church") which were not connected with the offense charged, reversed the lower court and granted the appellant his new trial, as requested. The appellant was then tried a second time on the same two counts and again found guilty on the same two counts and sentenced again to life imprisonment on each of the counts. Again he filed a motion for a new trial. The trial court overruled the motion, and he now appeals to this Court a second time, claiming error on the part of the trial court in refusing to grant him a second new trial because of alleged errors occurring in the second trial.

In the first alleged error the appellant attacks the legality of the arrest of the appellant by an FBI agent in California. It appears that on September 28, 1960, a United States Com-

missioner in Marion County, Indiana, issued a warrant for appellant's arrest as a fugitive to avoid prosecution under U. S. C., Title 18 sec. 1073.

The testimony shows that the FBI agent in California was accordingly notified by the FBI office in Indianapolis of the issuance of this warrant for the appellant and ordered promptly to make the arrest of the appellant as soon as he could be found, upon such information, without the warrant. The appellant, in support of the contention that the court should grant a new trial herein, argues that the arrest being illegal, testimony concerning the arrest was not admissible at the trial. The appellant fails to point out in his brief what evidence was admitted as a result of this arrest which was prejudicial in any manner to the appellant. It is true that where an arrest is illegal, the evidence which is prejudicial to the defendant thus obtained is not admissible upon a retrial, just as in the case of an illegal search. *Mapp* v. *Ohio* (1961), 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081; *Enlow* v. *State* (1955), 234 Ind. 156, 125 N. E. 2d 250.

An illegal arrest affects only the admissibility of the evidence with reference to the arrest, and if it is not prejudicial or harmful, there can be no error. The appellant fails in this respect to show in what way the evidence with reference to the arrest of the appellant on the fugitive charge, namely, that he was fleeing from the charge for which he is now being tried, would not be admissible, regardless of any arrest. As stated hereinafter, evidence of flight by a defendant from the scene of the crime or an escape from jail is admissible evidence tending to show guilt. (See citations hereinafter.)

The court held a hearing outside the presence of the jury with reference to the legality of the arrest. The only evidence we find that the jury heard was the very meager statement by the FBI agent who made the arrest that he was informed by communication from the Indianapolis office that a Federal warrant had been issued by the commissioner in Indianapolis,

charging the defendant with a felony, namely, unlawful flight to avoid prosecution in this case now pending, and he was ordered to make the arrest. He accordingly, upon such information (to which the appellant objected on the grounds it was hearsay) arrested the defendant as he drove up in a parking lot at a motel in San Diego. He asked the appellant at the time if he was Michael Walton Layton. Appellant said "yes" and was arrested. The agent stated he did not have a warrant for the defendant's arrest, but he made it upon the information at his office at Indianapolis. We do not think the admission of such evidence is error; in fact, it is material evidence with reference to the flight of the appellant from prosecution in the present case.

The agent who made the arrest in California relied upon direct transmitted information from the FBI office in Indianapolis that a warrant had been issued. This is reliable information upon which such officer had a right to act. We have held in Indiana that a policeman has a right to rely upon a radio report or order from headquarters (which is hearsay) to make an arrest for a felony. To deprive law enforcement officers of the right to act upon orders from headquarters, which normally is a reliable source of information, would be to unnecessarily hamstring law enforcement officers' attempts to apprehend a fugitive fleeing from the reach of the law.

"The right to arrest without warrant grew out of the need to protect the public safety by making prompt arrests. It had its origin in the ancient 'Hue and Cry,' upon which all hearing the alarm were bound to join in pursuit of a felon. The 'Hue and Cry,' if repeated by another, would be hearsay.

. . .

"Obviously in the case before us the police officer, if he were to do his duty promptly, could not be delayed by checking the reliability of the information behind the call over the police radio. He must by necessity rely upon headquarters. A police system, to be effective, must be one in which the members work together, keeping each other informed and

relying upon the actions and communications between members. With the use of automobiles in the commission of crime and escape, law enforcement officers are compelled to act with greater speed and less hesitancy than in years past. We find probable cause exists in this case for the arrest and search made by the officer. *Scaffido* v. *State.* (1934), 215 Wis. 389, 254 N. W. 651; *United States* v. *Smith* (1966), 6 Cir., 357 F. 2d 318; 6 C. J. S. *Arrest* § 6, p. 600." *Manson* v. *State* (1967), 249 Ind. 53, 229 N. E. 2d 801. See also: Concurring opinion by Lewis, C. J. in *Hadley* v. *State* (1968), 251 Ind. 24, 238 N. E. 2d 888.

Appellant cites only one case in support of his position, a New Mexico case (*State of New Mexico* v. *Lloyd Miller* (1966), 76 N. M. 62, 412 P. 2d 240). Upon examination of this case we find that it turned upon whether or not evidence of fingerprints taken at the time of an illegal arrest was admissible at the trial. Of course, the court held that it was not. We do not have that issue as to specific evidence presented here.

It seems that the appellant further contends that if the arrest was illegal, the mere fact in itself, if the appellant is tried, is sufficient grounds for a new trial. The illegality of the arrest affects only the admissibility of the evidence, as in the case of a search warrant. It does not affect the right of the state to try the appellant. The appellant fails to point out what the remedy would be if an appellant could not be tried merely because the arrest was illegal. Must he be set free in event of an illegal arrest? Must the defendant be returned and set free in California or on the steps of the courthouse and immediately rearrested under a valid warrant before he can be tried? We do not believe a court should engage in such futile and idle motions. To do so makes the judicial processes a laughing matter for the public.

The second claimed error is that evidence of the escape of the defendant from jail pending trial was erroneously admitted because approximately seven years had elapsed since he had committed the crime. The evidence shows, however, that he had been tried once and, at the time of his escape,

he was being held on the same offense, to be retried as a result of his appeal in which he asked for a new trial, which was granted. The argument by appellant is entirely specious. From time immemorial it has been held that evidence of flight or evidence of escape while being held on a charge is admissible upon the issue of guilt of the defendant, *Irvin* v. *State* (1957), 236 Ind. 384, 139 N. E. 2d 898; *Meredith* v. *State* (1966), 247 Ind. 233, 214 N. E. 2d 385; *Anderson* v. *State* (1885), 104 Ind. 467, 4 N. E. 63.

The third alleged error is that the court erred in giving instructions 13 and 29. These instructions recited the criminal statutes applicable to the case and the penalties therefor, which might be the death sentence if the jury saw fit to impose it. It is claimed that this constituted double jeopardy upon the second trial which appellant had requested on appeal. The appellant originally was tried on the same counts and asked for a new trial, not upon a condition excluding the death penalty, but for a new trial generally. Upon a review by this Court we granted him a new trial because of error in the admission of evidence of other robberies not connected by plan or scheme with the one charged.

It is argued that the defendant should not be subjected to the death penalty in the second trial, since he was given only a sentence of life in the first trial; that to force him to ask for a new trial and be subject to the full penalty, if found guilty, "chills," as one of the justices of the United States Supreme Court says, his desire for an appeal and makes it difficult for him in deciding whether to appeal or not.

See: Dissenting Opinion, Mr. Justice Fortas in *Cichos* v. *State of Indiana* (1966), 385 U. S. 76, 87 S. Ct. 271, 17 L. Ed. 2d 175.

True, an appellant may have qualms about asking for an appeal because in some instances, upon a retrial and new evidence, he may receive a more severe penalty than that which he received in the first trial. We point out, however,

that punishments fixed for criminal violations of the law are for the very purpose of causing those who contemplate crime to have "qualms" and to be "chilled" when they consider a criminal violation. The time for the appellant to have had his "qualms" and "chills" would have been prior to the crime which he planned and of which he has been found guilty. There is no reason for the court to reduce the penalty fixed by the legislature upon a second trial. Additional evidence on a second trial might warrant a change in the penalty. It might be argued also under the rationale of appellant that upon a second trial, no new or additional evidence should be introduced against the defendant and only that evidence used in the first trial would be proper. Such philosophy and reasoning we cannot approve as a principle applicable to criminal procedure. The principle should always be to find the truth, and thereby free the innocent and punish the guilty.

The United States Supreme Court has held that the right to appeal in a criminal case is not a constitutional right, but one to be granted by the legislature if it sees fit, and that such appeal is not a necessary element of due process.

". . . A review by an appellate court of the final judgment in a criminal case, however grave the offense of which the accused is convicted, was not at common law and is not now a necessary element of due process of law. It is wholly within the discretion of the State to allow or not to allow such a review. . . .

"It is, therefore, clear that the right of appeal may be accorded by the State to the accused upon such terms as in its wisdom may be deemed proper." *McKane* v. *Durston* (1894), 153 U. S. 684, 687, 688, 14 S. Ct. 913, 38 L. Ed. 867.

In 1956 Mr. Justice Black reiterated the principle in *Griffin* v. *Illinois* (1956), 351 U. S. 12, 18, 76 S. Ct. 585, 100 L. Ed. 891, that "a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review." It therefore follows that the legislature may grant an appeal

upon such terms and conditions and with such restrictions as it sees fit. For a convicted defendant to secure an appeal for review in Indiana, he is required in most cases to ask for a new trial in order to properly present alleged errors. Since this case does not present a Federal question, we find the law in Indiana to be that where an appellant asks for a new trial by way of a motion for a new trial, he waives the former jeopardy of the prior trial and double jeopardy in event his request for a new trial is granted. It is the law in this state that he must take his new trial without qualification or conditions and he stands in the position, if the new trial is granted, as if he had not previously been tried, waiving all questions of former jeopardy. He takes it subject to the regular penalties fixed by the legislature, as in the original case, in event of a subsequent second conviction.

Very early in Indiana history the Supreme Court of this state so interpreted the law of this jurisdiction.

". . . The legislature has interposed and said to all persons thus circumstanced, that if you believe you have been unjustly and wrongfully convicted, you may have another trial on the express condition that the State shall have the right to place you on trial again for the grade or grades of the offense of which you were found not guilty; and in our judgment, when a defendant asks and obtains a new trial, he thereby waives the constitutional protection, and must take it as the whole case." Ex Parte Bradley (1874), 48 Ind. 548, 549.

The appellant waived his right to complain of double jeopardy upon asking and receiving a new trial and he was subject to the full penalties of the statute of which he was found guilty of violating.

We are not unaware of the United States Supreme Court case of *Green* v. *United States* (1957), 355 U. S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199. That case originated under a violation of a Federal law and also was a 5-4 opinion. However, it is to be distinguished from the present case because in the first trial Green received a conviction of second degree murder and

the jury returned a silent or no expressed verdict on the first degree charge. The United States Supreme Court concluded that a failure to return a verdict on that count was the same as an acquittal thereof. Therefore there could not be a second trial on the count in which a silent verdict was returned, since it was considered as an acquittal on that count. We do not have that situation here, since the appellant was originally convicted of first degree murder, and was tried on that same offense a second time after he asked and received a new trial, and the jury in each trial returned the same verdict of a life sentence. In view of the fact that the State of Indiana may deny the right to appeal in a criminal case it may grant, as it has, the right to an appeal and a new trial upon an appeal, upon such terms and conditions as the State of Indiana deems prudent in the interest of law enforcement.

The legislature had made this contention plain in the enactment of the following statute:

"The granting of a new trial places the parties in the same position as if no trial had been had; the former verdict can not be used or referred to, either, in the evidence or in the argument." Acts 1905, ch. 169, § 281, p. 584, being Burns' Ind. Stat. Anno. § 9-1902 (1956 Repl.).

It is our interpretation of the right to appeal in Indiana that if a defendant asks for a new trial, he waives a claim of double jeopardy in event such new trial is granted, and stands as if no trial had taken place.

We further point out that the appellant did not receive the death penalty in the second trial. He received a life sentence. One cannot claim error for an abstract violation of a constitutional right where he shows no injury. We have frequently held that one must show injury before he can insist upon asserting a constitutional right. For example, to claim error in not receiving a speedy trial, the appellant must show that the delay injured him in some fashion and prevented him from having a fair trial. *Callahan* v. *State* (1966), 247 Ind. 350, 214 N. E. 2d 648.

Finally the appellant claims error because the court refused to give instruction number 39 which quoted the Constitution of the State of Indiana that the penal code is founded upon principles of reformation and not vindictive justice. The appellant, however, fails to cite any authority in support of his contention that this instruction should have been given. We are not obligated to hunt for authorities to support the contention in view of Rule 2-17 of the Supreme Court of Indiana. 2 I. L. E., *Appeals,* Sec. 387, p. 262; *Stalling* v. *State* (1964), 246 Ind. 102, 203 N. E. 2d 191.

The judgment of the trial court is affirmed.

Lewis, C. J., concurs; Hunter and Jackson, JJ., concur in result.

NOTE.—Reported in 240 N. E. 2d 489.