LUCIANO MONSERRATE v. STATE OF INDIANA.

[No. 368S53. Filed July 19, 1971.]

B. K. Delph, of Gary, for appellant.

Theodore L. Sendak, Attorney General, Robert F. Hassett, Deputy Attorney General, for appellee.

ARTERBURN, C.J.—This is an appeal from the Lake Criminal Court wherein the appellant was tried by jury before Special Judge T. Cleve Stenhouse. The jury found that the appellant was guilty of first degree murder, that he was twenty-three [23] years of age, and that he should suffer death. He was sentenced accordingly.

The appellant was jointly indicted for first degree murder with Luis Antonio Montes and Geraldo Torres Resto for the shooting and killing of Sharon Diane Potts, age nineteen [19]. Resto was granted a separate trial and Montes, who was sixteen [16] years of age at the time of the trial, was tried jointly with the appellant. Co-defendant Montes was found guilty of manslaughter and was sentenced to the Indiana Reformatory for a period of not less than two [2] nor more than twenty-one [21] years.

The first issue to be considered by this Court is whether the trial court violated the principles for the selection of jurors set down in *Witherspoon* v. *Illinois* (1968), 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. 2d 776. In that opinion, the United States Supreme Court stated at 391 U. S. 521:

"It is, of course, settled that a State may not entrust the determination of whether a man is innocent or guilty to a tribunal 'organized to convict.' *Fay* v. *New York*, 332 U. S. 261, 294. See *Tumey* v. *Ohio*, 273 U. S. 510. It requires but a short step from that principle to hold, as we do today, that a State may not entrust the determination of whether a man should live or die to a tribunal organized to return a verdict of death. Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected.

"Whatever else might be said of capital punishment, it is at least clear that its imposition by a hanging jury cannot be squared with the Constitution. The State of Illinois has stacked the deck against the petitioner. To execute this death sentence would deprive him of his life without due process of law." [footnotes omitted]

We note first that in the case before us, many prospective jurors were dismissed for cause after answering in the affirmative a question propounded by the prosecutor asking whether the juror had any conscientious opinion that would preclude him from affixing a death penalty in a proper case of first degree murder. If the juror indicated that he did have such a conscientious opinion, no further probing was apparently deemed necessary. Several jurors merely indicated that they did not believe in capital punishment. As was recognized by the Supreme Court in *Boulden* v. *Holman* (1969), 394 U. S. 478, 89 S. Ct. 1138, 22 L. Ed. 2d 433, and in *Maxwell* v. *Bishop* (1970), 398 U. S. 262, 90 S. Ct. 1578, 26 L. Ed. 2d 221, a person who states that he does not believe in capital punish-

ment might still be willing to follow the instructions of a trial judge and to consider the imposition of the death penalty in a particular case. At least two other jurors were dismissed for cause on even less tenuous grounds. For example, Ralph Dalton was dismissed for cause after the following voir dire:

"Q. State your name, please.

"A. Ralph Dalton.

"Q. Mr. Dalton you are the first one who has not heard before the previous question. You understand that the charge in this case is Murder in the First Degree and the possible punishment, upon finding of Guilty, could be death? Do you, sir, have any conscientious opinion that would preclude you from affixing a death penalty in a proper case?

"A. I am afraid it would.

"Q. Under any circumstances, you would not do it?

"A. Maybe in some circumstances, I may be different, but I'm very doubtful.

"Q. You doubt that you could affix the death penalty?

"A. Well . . .

"Q. I may just explore that a little more. Would you say that it's the death penalty that you're opposed to? Is that your answer?

"A. Well, in such case, yes.

"Q. If the circumstances, as you sit there now, can you concede any circumstances under which you might be sitting as a juror, vote for and affix a death penalty?

"A. If I was absolutely certain of the evidence, or if I wasn't absolutely sure, I wouldn't want to say yes.

"Q. Let me put it to you this way, Mr. Dalton: there are some circumstances in which perhaps you could, in a proper case, if the evidence warranted so, are you saying now you could affix the death penalty? Is that so?

"A. That's hard to answer.

"Q. Mr. Dalton, we understand. Please believe me, I'm not trying to harass you in any way. I just want to know if your opinion about the death penalty is conscientious, a conscientious opinion; that is, do you oppose a death penalty under any circumstances, or is it just a question of, well, I've got to hear the case. I know all of you want to say I just want to hear the facts and

I'll make up my mind, but I am asking you now, as you sit there, is there a possibility, upon you hearing the proper facts and circumstances, that you might affix a death penalty?

"A. I suppose in some cases, maybe I could. It would be very hard for me, though, to make that decision."

We likewise find that under the *Witherspoon* decision, Ralph Jackson was improperly dismissed for cause, based upon the following voir dire:

"Q. Woud you state your full name?

"A. Ralph Jackson.

"Q. And what is your address?

"A. Rural Route 1, Box 286, Cedar Lake, Indiana.

"Q. Mr. Jackson, were you in Court when I read the indictment?

"A. Yes, sir. I just came in.

"Q. Mr. Jackson, do you have any conscientious opinion that would preclude you from affixing a death penalty in a proper case?

"A. No, sir.

"Q. Do you have any conscientious opinion that would preclude you from voting for a death penalty in a proper case of First Degree Murder, solely because of the age of one [1] Defendant, Luis Antonio Montes, age 16?

"A. I'm afraid I'd be influenced, though.

"Q. Your feeling is that under those circumstances, could you affix a death penalty because of the age?

"A. Having a boy of my own and having worked with young people, it would be almost impossible for me to do that.

"Q. Your Honor, we'll challenge for cause Mr. Jackson."

The State contends that the appellant waived the question of improper jury selection inasmuch as the appellant cited no authority which holds the *Witherspoon* decision to have retrospective application. However, a footnote in the *Witherspoon* case at 391 U. S. 523 resolves this issue:

"We have considered the suggestion, advanced in an *amicus curiae* brief filed by 27 States on behalf of Illinois, that

we should 'give prospective application only to any new constitutional ruling in this area,' particularly since a dictum in an 1892 decision of this Court approved the practice of challenging for cause those jurors who expressed 'conscientious scruples in regard to the infliction of the death penalty for crime.' *Logan* v. *United States*, 144 U. S. 263, 298. But we think it clear, *Logan* notwithstanding, that the jury-selection standards employed here necessarily undermined 'the very integrity of the . . . process' that decided the petitioner's fate, see *Linkletter* v. *Walker*, 381 U. S. 618, 639, and we have concluded that neither the reliance of law enforcement officials, cf. *Tehan* v. *Shott*, 382 U. S. 406, 417; *Johnson* v. *New Jersey*, 384 U. S. 719, 731, nor the impact of a retroactive holding on the administration of justice, cf. *Stovall* v. *Denno*, 388 U. S. 293, 300, warrants a decision against the fully retroactive application of the holding we announce today."

Furthermore, in *Maxwell* v. *Bishop* (1970), 398 U. S. 262, 90 S. Ct. 1578, 26 L. Ed. 2d 221, the United States Supreme Court remanded the case to the District Court for consideration of the principles enunciated in *Witherspoon* even though the petitioner's trial took place long before the Supreme Court's decision in *Witherspoon*. *Witherspoon* v. *Illinois* requires only that we reverse the sentencing of the trial court.

We also find, however, that the appellant is entitled to a new trial on the basis of the United States Supreme Court's decision in *Bruton* v. *United States* (1968), 391 U. S. 123, 135, 88 S. Ct. 1620, 1627, 20 L. Ed. 2d 476, 485, where the Court stated:

"Nevertheless, as was recognized in *Jackson* v. *Denno, supra,* there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Compare *Hopt* v. *Utah, supra; Throckmorton* v. *Holt,* 180 U. S. 552, 567; *Mora* v. *United States,* 190 F. 2d 749; *Holt* v. *United States,* 94 F. 2d 90. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are

the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed. *Pointer* v. *Texas, supra.*" [footnotes omitted]

In the case before us, appellant's co-defendant at the trial did not take the witness stand, though a statement implicating the appellant by co-defendant Montes was read to the jury. That portion of the statement concerning the appellant stated:

"Q. What happened next?
"A. The car was parked in the alley at the rear of Monsarratte home, with Monsarratte driving we drove through all kinds of alleys and when we got in an alley behind Deodar St. the one that runs behind the OLG Church and because there were some garbage cans away from the buildings Monsarratte had to slow down and when he did Sharon jumped out of the car. When she jumped out she grabbed Monsarrattes gun which was on the dash board of the car and in front of her while she was in the car. Monsarratte got out of the car and took the gun away from her. She made remarks that she wanted to kill herself. Monsarratte told her to get back in the car and that we would take her home. She said no and also said that if we did not kill her she was going to tell everyone that we had rapped [raped] her. After she said that Monsarratte again told her to get into the car. She then again said that if we would not let her kill herself that we better then kill her. After she said this then Monsarratte shot her."

Regardless of the fact that the trial judge had instructed the jury to consider the confession of co-defendant Montes only as to Montes and not to appellant Monserratte, we find that we must reverse the judgment of the trial court. *Roberts* v. *Russell* (1968), 392 U. S. 293, 88 S. Ct. 1921, 20 L. Ed. 2d 1100, applies the holding in *Bruton* retroactively to both fed-

eral and state prosecutions inasmuch as the rule enunciated by the Supreme Court recognized that the error went to the very basis of a fair trial such that the guilt or innocence of the defendant may not have been reliably determined.

We find that the statement by Montes implicating the appellant cannot be held to be harmless error since the other particularly incriminating evidence used to convict the appellant was testimony of another participant in the crime and of a convicted robber who volunteered to testify against the appellant.

In view of these two recent United States Supreme Court decisions, we are compelled to find error. The judgment and sentence of the trial court are therefore reversed and the case is remanded for a new trial.

Givan, Prentice, DeBruler, Hunter, JJ., concur.

NOTE.—Reported in 271 N. E. 2d 421.