ROY BUISE *v.* STATE OF INDIANA.

[No. 371S59. Filed April 12, 1972. Rehearing denied June 5, 1972.]

James L. *Brand*, of Greenfield, for appellant.

*Theodore L. Sendak*, Attorney General, *A. Frank Gleves, III*, Deputy Attorney General, for appellee.

ARTERBURN, C. J.—This is an appeal taken from a judgment of the Hancock County Superior Court by which the defendant was convicted of second degree murder pursuant to *Burns' Ind. Stat. Anno.*, § 10-3040 (1956 Repl.). Appellant was sentenced to the Indiana State Prison for not less than fifteen (15) nor more than twenty-five (25) years.

A review of the evidence in support of the verdict of the lower court reveals that on March 15, 1970, the appellant, Roy Buise, told his wife he wanted her out of the house. When he returned to his home later in the day, he found his wife packing some of her belongings. They then engaged in some conversation about his suspicions that she was having an affair with another man. Shortly thereafter, Mrs. Buise left the apartment and appellant went to his job. Mrs. Buise

ultimately went to the apartment of Mr. Richard Kuennen, the manager of the plant where she worked, and the man with whom she was having an affair.

After appellant's departure from his home, he proceeded to inquire among acquaintances about the name and address of his wife's boss. Upon learning that Kuennen lived several miles away in Anderson, Indiana, appellant asked Andrea Miller, a girlfriend with whom he was having an affair, to drive him to Anderson. Appellant first stopped by his apartment to pick up a pistol. Then, he and Miss Miller drove to Anderson, Indiana, in search of Richard Kuennen's apartment.

Upon locating the apartment, appellant drew the pistol, then knocked on the door. When Kuennen denied entrance to the appellant, he kicked the door in. After smashing the door, appellant shot Kuennen through the heart. Appellant then forced his way in to the bedroom and struck his wife several times with the gun.

Appellant then returned to Miss Miller's car, and told her that he had shot a man and "beat the hell out of" his wife. He then told Miss Miller to drive to a bridge so he could attempt to dispose of the gun by throwing it into a creek. Appellant then returned home to pick up spare cartridges for the pistol, which he then disposed of in another creek. He asked Miss Miller to dispose of his jacket and to burn the paper with Kuennen's name on it. Appellant then returned to work.

Appellant presents four assignments of error on the part of the trial court. Alleged error number one is that the trial court committed reversible error when it failed to sustain defendant's motion to be allowed to make his opening statement at the close of the State's case rather than following the State's opening statement as provided by statute. The time in which parties are allowed to make opening statements is regulated by statute. *Burns' Ind. Stat. Anno.*, § 9-1805, (1956 Repl.) provides as follows:

"The jury being impaneled and sworn, the trial shall proceed in the following order:

First. The prosecuting attorney *must* state the case of the prosecution and briefly state the evidence by which he expects to support it, and the defendant *may* then state his defense and briefly the evidence he expects to offer in support thereof.

Second. The prosecuting attorney shall then offer the evidence in support of the prosecution and the defendant shall then offer the evidence in support of his defense." (emphasis added)

In this case when the prosecutor concluded his own opening statement, the trial judge offered the defendant the opportunity to make his opening statement. Rather than making his opening statement then, at the time called for by statute, appellant instead moved the court to allow him to make the opening statement at the close of the prosecutor's evidence. The motion was overruled. Thus, with full knowledge that the court would not permit the opening statement by the defendant at the time he desired, the appellant nonetheless elected not to make an opening statement at the proper time. In our opinion, the defendant having had an opportunity to make an opening statement, and electing not to do so, waived such privilege.

The purpose of an opening statement is primarily to inform the jury of the nature of the case and the nature of the defense and just how the evidence as presented fits into the charges filed and the defense made. *Blume, Kissinger* v. *State* (1963), 244 Ind. 121, 189 N. E. 2d 568. The opening statement is not evidence and the jury is so instructed. Neither is an argument permitted. Therefore, the defendant can not be said to have been harmed unless the State has abused its privilege in making the opening statement by misstatement or false statements which have prejudicially misled a defendant.

The procedure at one time in the state by statute permitted the defendant to make an opening statement after the State

had presented its case in chief. This has changed by statute and we can find no valid reason presented by the defendant why such procedure, as now fixed by statute, is invalid or prejudicial. The defendant points out nothing in the opening statement by the prosecuting attorney that misled or surprised him.

It is further to be noted that the procedure for discovery was also available for the defendant in order to apprise himself what the evidence of the State would be. There is very little ground for a defendant to be taken by surprise in his defense under the present criminal procedure for discovery.

The appellant claims that it was error for the prosecuting attorney in his opening statement to refer to the evidence he expected to present with reference to the relationship and affair the appellant was having at the time he shot and killed the victim involved in this case. Such evidence was relevant and proper for the jury to consider on the question of malice and the background and surrounding circumstances that incited and caused the shooting. The evidence of the marital problems between the appellant and his wife was highly significant to this case and any evidence relating to the causes of the shooting which came about because appellant's wife was having an affair is relevant. It is clear that evidence of appellant's affair is relevant in showing his motive and malice or premeditation. The entire chain of events surrounding the killing is concerned with marital relations, and the fact that appellant betrayed his wife is equally as important as the fact that his wife betrayed him. It is only proper that the jury was apprised of the activities of the appellant as well as those of his wife. It was entirely proper for the prosecutor to tell the jury that he would introduce evidence showing the cause, motive and malice involved in the situation.

We can find no prejudicial error in the prosecutor's remarks. They were fully supported by the evidence which he

introduced and to which the appellant objected. He objected to Miss Miller's testimony about her relationship with the appellant. The evidence showed that it was a love affair and that she was 17 years old and that appellant had written a letter to Miss Miller which was introduced in evidence pointing out those facts. As stated above, the relationship between the various parties involved and present at the time of the shooting, and the beating of appellant's wife are certainly relevant. The jury had the right to know the cause of Miss Miller's presence at the scene of the crime at the time, and to know her relationship with the appellant when she was called as a witness.

The appellant further urges error because the court did not instruct the jury that the intimate relationship between appellant and Miss Miller was admissible only upon the issue of showing motive for appellant shooting and killing the victim. Motive alone is not involved in this case, but also malice and the relationship of the parties, so that the jury may determine the credibility to be attached to the testimony of Miss Miller or any others involved.

We further point out that the appellant made no request to the court to give an instruction, which he now urges should have been given. The court in our opinion was guilty of no error in the respect urged. *Bucci* v. *State* (1968), 250 Ind. 670, 237 N. E. 2d 87.

Appellant further claims error by prejudicial remarks uttered in the court by the prosecuting attorney while appellant was on the stand to the effect, "They've got him trained real well." The trial court immediately admonished the jury not to consider such remarks. Admitting such remarks were prejudicial, we must, however, assume that they were discredited by the jury under the court's instruction. There are very few trials that are perfect in all respects. Remarks, inadvertent and those made under the tensions or heat of the contest, creep in; but we must assume a jury of rational men under the instruction of the court will disregard improper remarks.

In the case of *Keifer* v. *State* (1933), 204 Ind. 454, 184 N. E. 557, the court stated that:

". . . Where it appears that reasonable and prompt measures are taken by the trial court to prevent any injurious effect from such improper remarks, it will be presumed that the error has been cured, in the absence of a contrary showing."

Therefore, without a showing to the contrary, we are unable to find reversible error in appellant's allegation.

Lastly, the appellant contends that the verdict of the trial court is not sustained by sufficient evidence. This court has repeatedly stated that when considering questions of sufficiency of the evidence, it will adhere to the following rule: This Court will not weigh the evidence nor resolve the questions of credibility, but will look to the evidence most favorable to the State and the reasonable inferences therefrom which support the verdict of the trial court or jury. *Washington* v. *State* (1971), 257 Ind. 40, 271 N. E. 2d 888; *Davis* v. *State* (1971), 257 Ind. 46, 271 N. E. 2d 893; *Grimm* v. *State* (1970), 254 Ind. 150, 258 N. E. 2d 407; *Sharp* v. *State* (1970), 254 Ind. 435, 260 N. E. 2d 593; *Smith* v. *State* (1970), 254 Ind. 401, 260 N. E. 2d 558; and *Langley* v. *State* (1968), 250 Ind. 29, 232 N. E. 2d 611. A conviction must be affirmed, if having applied the rule, there is evidence of probative value from which the trier of the facts could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Gann* v. *State* (1971), 256 Ind. 429, 269 N. E. 2d 381; *Asher* v. *State* (1969), 253 Ind. 25, 244 N. E. 2d 89.

Appellant charges that there is no evidence in the record to show that the killing was done maliciously and purposely. Reviewing the evidence most favorable to the verdict we can find no grounds for reversal. The appellant armed himself, had his lover drive him to the home of his wife's lover, broke the door down and admitted the shooting to his lover and that he had beat up his wife when he returned to his car. He later disposed of the evi-

dence, that being the weapon which was shown to have been the weapon which caused the death of the decedent. Malice may be inferred from the circumstances in evidence and the use of a deadly weapon. *Landreth* v. *State* (1930), 201 Ind. 691, 171 N. E. 192; and *Brattain* v. *State* (1945), 223 Ind. 489, 61 N. E. 2d 462. Our review of the record reveals ample evidence upon which the conviction can be founded and we, therefore, are compelled to accept the finding and verdict of the trial court.

Judgment of the trial court is affirmed.

DeBruler, Givan, Prentice, JJ., concur; Hunter, J., concurs in result.

NOTE.—Reported in 281 N. E. 2d 93.