CHARLES A. FRITH *v*. STATE OF INDIANA; RALPH E. WILLIAMS *v*. STATE OF INDIANA.

[Nos. 374S55, 373S60. Filed April 1, 1975.]

*Harriette Bailey Conn,* Public Defender of Indiana, *Darrell F. Ellis,* Deputy Public Defender, for appellant Frith. *William C. Erbecker* of Indianapolis, for appellant Williams.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellants in these two above-captioned cases were tried jointly by a jury and convicted of First Degree Murder; to wit: Murder in the Perpetration of a Robbery. Both Appellants were sentenced to death.

Each Appellant filed a separate appeal. Appellant Williams retained private counsel for his appeal, and Appellant Frith is represented by the Public Defender of the State. We consolidated the cases for purposes of the six-volume record, and we now treat both cases in this single opinion since many of the issues raised by each Appellant are identical.

Before we begin consideration of the issues raised in this appeal, we are compelled to call attention to the fact that the attorney for Appellant Williams has filed his Brief with plagiarized material. The material has been copied in the Brief without quotation marks, indentation or citation in violation of Ind. R. Ap. P. 8.2(B)(6) with reference to the preparation of Briefs. For example, although 39 ALR 3d is not listed in the "Table of Citations" section, nor anywhere else in the Brief, more than ten pages of 39 ALR 3d are copied out in the Brief, comprising about fourteen pages of

the Brief. Furthermore, internal evidence creates a strong suspicion that other portions of the Brief have been copied verbatim, without acknowledgment from other sources. Footnotes 6 and 14, respectively, refer to "Appendix A infra" and "Appendix B, infra," but there are no appendices in the Brief. On page 86 of the Brief the following sentence occurs: "We shall see in Part II of this Brief, pp. 67-78, infra, . . ." The use of "infra" and the future tense "shall" implies that pp. 66-78 will occur after p. 86, an obvious absurdity. An examination of Brief pages 64-70 reveals that at the bottom of page 67 there is also the incompletely erased number "-72-," and Brief page 68 has below that number the partially erased number "-73-." It seems that this portion of the Brief has been copied from another brief.

To place all this conglomeration of uncited material in a Brief is an imposition on the Court. We do not mean to say that such material should not be used if properly identified. However, as we have said, "the great rule in drawing briefs consists in conciseness with perspicuity." *Gardner* v. *Stover*, (1873) 43 Ind. 356. A brief is not to be a document thrown together without either organized thought or intelligent editing on the part of the brief-writer. Inadequate briefing is not, as any thoughtful lawyer knows, helpful to either a lawyer's client or to the Court. We make this point so that when the compensation for Appellant Williams' attorney is fixed some consideration may be given to the way in which the Brief in this case was prepared. We have, however, waded through this voluminous brief. In spite of the brief-writer's disregard for Ind. R. Ap. P. 8.2 (B) (6), we have considered Appellant's legal arguments as if they had been properly presented to this Court.

## I.

Both appellants assert that the evidence was insufficient to warrant a finding of guilty. This court has consistently

held that in reviewing an allegation that a verdict is contrary to law or not sustained by sufficient evidence, the Supreme Court will not weigh the evidence or resolve questions concerning the credibility of witnesses. Instead, the court will look to that evidence most favorable to the State and the reasonable inferences to be drawn therefrom, and the conviction will be affirmed if, from that viewpoint, there is substantial evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt of the crime for which he was convicted. *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686; *Riner* v. *State,* (1972) 258 Ind. 428, 281 N.E.2d 815; *Buise* v. *State,* (1972) 258 Ind. 321, 281 N.E.2d 93.

The evidence is that on August 12, 1971, two men entered a pawn shop in Anderson carrying a sack with a gun hanging outside the sack. An employee, who was reading at the time, heard the owner of the pawn shop exclaim "Oh, no." and then the explosion of a gun. The employee looked up and saw the owner-victim sprawled face down on the floor, "his brain on the floor." The victim's pockets were rummaged by the two men and then the employee was forced at gunpoint to the back of the pawn shop and searched. The robbers took a black box from the safe and left. At trial, the employee identified Appellants as the robbers and Appellant Williams as the killer.

Two witnesses testified that at the time of the incident they saw the Appellants, whom they identified in court, leaving the pawn shop and that Williams was carrying a black box.

After a car chase, Frith was captured hiding in a horse trough in the roof of a barn on a farm. Williams was found that night as he walked along a highway. He ran up an embankment toward railroad tracks but was apprehended.

The essence of Appellants' sufficiency argument is that the identification by the pawn-shop employee is inadequate because that employee was an elderly man with less than perfect

vision and had been unable to describe Appellants as the robbers on the day of the crime and had in fact once identified someone else as the killer.

The State's case, however, does not rest solely on the identification by the eye-witness, although a conviction based on a single eye-witness is proper. *Rhodes* v. *State*, (1972) 154 Ind. App. 594, 290 N.E.2d 504; *Bryant* v. *State*, (1973) 157 Ind. App. 198, 299 N.E.2d 200. The jury had before it evidence of presence at the scene of the crime and subsequent flight, which may be considered as circumstantial evidence of guilt. *Thomas* v. *State*, (1970) 254 Ind. 561, 261 N.E.2d 224; *Rodman* v. *State*, (1973) 155 Ind. App. 224, 292 N.E.2d 288. We think there was clearly probative evidence to support the jury's verdict.

## II.

Both Appellants allege error in the trial court's dismissal of certain jurors for cause on the basis of their opposition to the death penalty. Appellants were sentenced to death under the terms of the statute in effect at the date of the alleged murder, August 12, 1971. This statute, Burns § 10-3401 (1956 Supp.) reads:

> "Whoever purposely and with premeditated malice, or in the perpetration of or attempt to perpetrate a rape, arson, robbery, or burglary, kills any human being, is guilty of murder in the first degree, and on conviction shall suffer death or be imprisoned in the state prison during life."

The current first degree murder statute, created by amendment in 1973, provides that:

> "All offenses committed and all prosecutions commenced under the law providing for first degree murder in force prior to the effective date of this act shall remain punishable and be prosecuted as provided by that act. . . ."

Section 2 of Acts 1973, P.L. 328.

The present law fixes as a penalty for a murder in the commission of a robbery by a person not previously convicted

of an unrelated rape, arson, robbery or burglary a sentence of life imprisonment. Ind. Code § 35-13-4-1, Burns § 10-3401 (1974 Supp.). The touchstone of Appellants' claim is the United States Supreme Court's opinion in *Witherspoon* v. *Illinois,* (1968) 391 U.S. 510, 88 S. Ct. 1770, 20 L. Ed. 2d 776. Neither Appellant attempts to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt or innocence. Cf. *Witherspoon, supra,* 391 U.S. at 517-518. Thus, their prayer for relief is limited to a claim that the death penalty can not be imposed by a jury from which were excluded jurors who answered on *voir dire* as did certain of the jurors in this case. This issue is moot in view of *Furman* v. *Georgia,* (1972) 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346, and our interpretation thereof in *Adams* v. *State,* (1972) 259 Ind. 164, 284 N.E.2d 757, where we held that under the statute existing at the time of the alleged crime "we have no alternative but to remand this case to the trial court with directions to vacate its sentence imposing the death penalty and in lieu thereof impose a life sentence on the appellant." 284 N.E.2d at 758. *Accord, Turczi* v. *State,* (1973) 261 Ind. 273, 301 N.E.2d 752.

Nevertheless, we make the following observations on the issue. A *Witherspoon* issue:

"is a narrow one. It does not involve the right of the prosecution to challenge for cause those prospective jurors who state that their reservations about capital punishment would prevent them from making an impartial decision as to the defendant's guilt. Nor does it involve the State's assertion of a right to exclude from the jury in a capital case those who say that they could never vote to impose the death penalty or that they would refuse even to consider its imposition in the case before them." *Witherspoon, supra,* 391 U.S. at 513-14.

The best argument that can be made is made by Appellant Frith whose claim is that, at least in respect to two particular

prospective jurors, the *voir dire* when considered as a whole indicates that these jurors were ambivalent or indefinite about the nature and extent of their opposition to capital punishment. Nevertheless, the *voir dire* of these two prospective jurors contains the following exchanges which, we believe, demonstrate that in the final analysis the trial judge was correct to rule that these jurors were outside the ambit of the *Witherspoon* test.

"Q. So are you saying that if you were selected as a juror here to sit in judgment in this case and if after hearing the evidence you would determine that the defendant or defendants were guilty of murder in the first degree, you could not under any circumstances consider giving the death penalty.

A. I would not. I thought you said either life imprisonment. I would give life imprisonment.

Q. I'm talking about the death penalty.

A. No, not the death penalty.

Q. You would under no circumstances consider the death penalty.

A. No.

Q. You cannot think of any circumstances or a situation under which you would even consider it.

A. No.

Q. You would exclude that part of the law from your mind.

A. Yes.

Q. Are you telling me that regardless of what the circumstances are or might be and the facts that might come out in this case, you just would put that part of the law out of your mind and disregard it? Is that what you are talking about?

A. Yes, I believe, yes, this is what I am telling you.

Q. Are you telling me, Mr. Usfo, that you would not consider that law—that part of the law at all, regardless of what might come out in the evidence?

A. Yes, I understand.

Q. That's what you are saying. You are saying this.

A. Yes.

JUDGE: Mr. Usfo, are you telling the court you understand when I say a set of certain circumstances I'm not talking about this case because the facts of the case I don't know. I don't know the evidence the prosecutor has. So when I use a hypothetical question it isn't based upon anything that might come out in this case but are you telling the court that under no circumstances would you consider the death penalty?

A. Yes, I am."

### III.

Appellant Frith objected to the introduction into evidence of items seized from the get-away car after, so Appellant urges, an illegal search. The fact is that all the items were in plain view of the police as they gathered around the car and are thus not products of a search. *Millar* v. *State*, (1973) 260 Ind. 368, 295 N.E.2d 814, and cases cited therein.

Appellant Frith moved for a separate trial and the denial of this motion is another issue he raises. The granting of a motion for separate trials rests solely within the discretion of the trial judge. *Marx* v. *State*, (1957) 236 Ind. 455, 141 N.E.2d 126. Reversible error lies only for an abuse thereof. *Johnson* v. *State*, (1964) 245 Ind. 295, 198 N.E.2d 373: *Ware* v. *State*, (1963) 243 Ind. 639, 189 N.E.2d 704. Appellant Frith reasons that since separate trials are necessary, upon motion, in cases where one co-defendant has made confessions or admissions implicating other co-defendants, the same rule should apply when "damaging evidence of actions by a co-defendant" reflect "by implication, upon any one tried with him." *See: Monserrate* v. *State*, (1971) 256 Ind. 623, 271 N.E.2d 420; *Baniszewski* v. *State*, (1970) 256 Ind. 1, 261 N.E.2d 359. Obviously, under Appellant Frith's argument separate trials would be a matter of right for all situations of co-defendants, thereby nullifying the object of the statute Ind. Code § 35-3.1-1-9, Burns § 9-911 (1956 Repl.). We must give the statute some validity. The

point of the *Monserrate*-type situations is to protect a co-defendant from another's decision to waive fundamental constitutional rights against self-incrimination. There is no constitutional right to be protected from damaging evidence.

Appellant Frith's final claim is that after arrest he was not immediately taken before a magistrate for a preliminary hearing as required by statute. Ind. Code § 35-4-1-1, Burns § 9-704a (1974 Supp.). A violation of this statute is not *per se* a reason for excluding statements obtained from the defendant during the interval between arrest and preliminary hearing, but is one factor to be considered on the question of the voluntariness of any statements obtained. *Nacoff* v. *State*, (1971) 256 Ind. 97, 267 N.E.2d 165. Appellant Frith was advised of his *Miranda* rights prior to any questioning. He does not challenge the adequacy of these warnings nor does he challenge the voluntary nature of his admissions. Therefore, the admissions were properly admitted into evidence.

Appellant Williams complains that Instruction No. 8 was mandatory in nature. The Appellant's attorney failed to set out in his brief the instructions or the objection thereto. Our Ind. R. Ap. P. 8.3 (A) (7) states:

> "When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto. Any error alleged in the motion to correct errors not treated as herein directed shall be deemed waived."

Moreover, although we are not compelled to search the record to find the instruction, we find that the instruction in fact was not mandatory, but merely a statement of a general principle of law without any mandate to the jury therein.

Finding no error as to either Appellant, we affirm the conviction but, as previously stated, remand to the trial court for the vacation of the death penalty and in lieu thereof the

imposition of a sentence of life imprisonment for each appellant.

Givan, C.J. and Hunter, J., concur; Prentice, J., concurs in result with statement; DeBruler, J., concurs in result.

### CONCURRING OPINION

PRENTICE, J.—I concur in the result and also in the opinion of the majority, except insofar as it appears to hold that presence at the scene of the crime and subsequent flight would be sufficient circumstantial evidence to support a conviction. It is my opinion that standing alone, such circumstantial evidence would not be sufficient.

We have held on a number of occasions, that flight or attempted flight is competent evidence of the *consciousness of guilt. Layton* v. *State,* (1968) 251 Ind. 205, 240 N.E.2d 489; *Walker* v. *State,* (1968) 250 Ind. 649, 238 N.E.2d 466; *Meredith* v. *State,* (1966) 247 Ind. 233, 214 N.E.2d 385; *Finger* v. *State,* (1973) 260 Ind. 148, 293 N.E.2d 25. (Rehearing denied 297 N.E.2d 819). Whether or not there has been a *flight in avoidance* or merely an innocent exit must be determined from the surrounding circumstances. If it may be fairly inferred from such circumstances that there was a flight in avoidance, such inference reinforces other legitimate inferences drawn from circumstantial evidence of guilt.

NOTE.—Reported at 325 N.E.2d 186.