Samuel J. GUTIERREZ, Appellant,

v.

STATE of Indiana, Appellee.

No. 977S717.

Supreme Court of Indiana.

March 26, 1979.

**1208**

Steve Lustina, Merrillville, for appellant.

Theodore L. Sendak, Atty. Gen., Gordon F. White, Jr., Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Gutierrez, along with Robert Taggart and William McCall, were charged by a Lake County Grand Jury with premeditated murder and murder during the Commission of a robbery for the shooting death of Richard Wozniak. The three were jointly tried to a jury in the Jasper Circuit Court. Gutierrez was found guilty of felony murder and second degree murder on March 11, 1977, and was sentenced to a term of life imprisonment with sentencing withheld on the second degree murder conviction.

Six issues are presented for our review, concerning: (1) the denial of appellant's Motion for Severance; (2) the admission of evidence concerning other killings by co-defendants, and testimony related to the existence of a gang or organization; (3) the admission of evidence of appellant's prior acts of misconduct; (4) the use of impeachment evidence directed against McCall as substantive evidence against appellant; (5) the trial court's refusal to allow appellant to testify under an order restricting the scope of cross examination, and; (6) the sufficiency of the evidence.

I.

Appellant made numerous motions for severance both before and after the commencement of trial contending that a separate trial was necessary because the State was proceeding on a gang theory and because a co-defendant had made a statement adverse to appellant's interests.

■ The decision to grant or deny a motion for separate trial is within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion. *Rogers v. State* (1978) Ind., 375 N.E.2d 1089, 1091; *Frith v. State* (1975), 263 Ind. 100, 109, 325 N.E.2d 186, 191. Appellant first argues that he should have been granted a separate trial because of an out of court statement made by a co-defendant McCall which incriminated appellant and which was admitted into evidence. At trial, McCall chose to appear as a witness on his own behalf. He testified that appellant Sam Gutierrez had had no knowledge of what happened or what was about to happen at the Sicilian Inn where the murder occurred. The State, in an attempt to impeach McCall, then introduced the following statement which he had made earlier:

"When we first went by we dropped Sam off to see who was in there, and he went in for a couple of minutes. And we drove around the block and then picked him up. He said there was about four to five kids in the game room, and three people behind the counter. And Cathy and her boyfriend and Rick Wozniak and several people were sitting out front. He said whatever happened Cathy and her boyfriend had better not get hurt and I had better do a good job on Wozniak."

■ The admission of an incriminating statement by a co-defendant is a possible ground for severance only when such statement would be inadmissible against the moving defendant. Ind.Code § 35–3.1–1–11(b) Burns 1979; *Resnover v. State* (1978), Ind., 372 N.E.2d 457, 460. Inasmuch as the out-of-court asserter, McCall, was present in court and was available for cross-examination, the statement was not inadmissible. *Williams v. State* (1978), Ind., 379 N.E.2d

449; *Rogers v. State* (1978), Ind., 375 N.E.2d 1089, 1092; *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482.

■ Appellant also claims that he was entitled to a separate trial due to the State's effort to prove that the defendants were members of a criminal organization headed by Taggart. Appellant's contention seems to be that he was prejudiced by the damaging evidence introduced against other members of the gang. A similar claim was rejected by this Court in *Frith v. State* (1975), 263 Ind. 100, 325 N.E.2d 186, wherein we observed that an adoption of appellant's position would require separate trials in all situations involving co-defendants. *Id.* at 263 Ind. 109, 325 N.E.2d 191. On the record presented, we find no abuse of discretion by the trial court in denying appellant's motion for severance.

## II.

Appellant's co-defendant, William McCall, had entered a plea of not guilty by reason of insanity. One of the psychiatrists appointed to examine McCall was a Dr. Constan. At trial, Dr. Constan testified that in his opinion, McCall was sane at the time of the Wozniak murder. He testified that his opinion was based on his examination of McCall on September 2, 1975, and on a brief interview in February, 1977, at which time McCall refused to cooperate. When asked whether McCall had also been uncooperative in the earlier examination, Dr. Constan responded:

"He acted quite naturally. He answered questions rationally, coherently. He didn't try to hide anything. He admitted he'd been involved in the charges by pulling the trigger for two of the four killings."

At this point appellant's counsel approached the bench and made alternative motions for mistrial or severance. These motions were denied as to all defendants.

■ Appellant concedes that the decision to grant or deny a mistrial is a matter committed to the discretion of the trial court and is reviewable solely on the issue of abuse thereof. *Downs v. State* (1977),

Ind., 369 N.E.2d 1079, 1080. However, appellant contends that a mistrial was warranted in this situation because he was placed in a position of grave peril by Dr. Constan's remark which, when taken together with the State's proof of a criminal organization, tended to indicate that the gang had been involved in killings other than that of Richard Wozniak. We cannot agree. Aside from the objectionable comment by Dr. Constan, there was no evidence presented which related to the killing of any persons other than Wozniak. While the State did attempt to show that the three defendants were members of an organization, it did not present any evidence concerning the group's criminal activity beyond those charged in the instant cause.

In order to accept appellant's position, we would be required to believe that the jury inferred the following: that McCall was involved in other killings; while he was a member of a criminal organization; that at the time of these killings by the organization, appellant was a member of the group, and; that appellant, by virtue of his association with the organization, was also involved in these other killings. With only a cold, impersonal record to review, this Court can only speculate as to the likelihood of the jury's drawing the necessary inferences which would have imperiled appellant. *Compare White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312. The trial judge, who was in a better position to estimate the potential for prejudice, apparently concluded that the jurors would not so infer. We thus cannot say that the trial court abused its discretion in denying appellant's motion for mistrial.

## III.

Appellant next argues that the trial court erred by admitting evidence offered by his co-defendants and the State allegedly in reference to prior acts of misconduct and criminal activity by appellant. This argument is not supported by the record. With one exception, there was no evidence presented which tended to prove that appel-

lant or any other defendants were involved in criminal activity apart from the robbery and murder of Richard Wozniak. The sole exception was the unresponsive remark by Dr. Constan discussed previously. There is thus no error here.

### IV.

■ The next assignment of error relates to the admission of co-defendant McCall's out-of-court statement set out in Issue I *supra.* McCall testified that he did not recall making the prior inconsistent statement. In rebuttal, the state attempted to prove that McCall had, in fact, made the earlier statement by calling Detective Highsmith as a witness. See Ind.Code § 34–1–15–1 (Burns 1973). Highsmith testified that, after his arrest, McCall gave the statement which had been introduced as impeachment evidence. Appellant requested that the court instruct the jury that the rebuttal testimony of Highsmith should be considered only in relation to McCall's credibility and not as substantive evidence against appellant. No instruction was given.

On appeal, appellant concedes that McCall's earlier statement was admissible under *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, but contends that the statement should not have been admitted as substantive evidence. This contention is in error. Where, as here, the out-of-court declarant is present in court, it cannot be said that the truthfulness of the out-of-court assertions rests upon the credibility of someone not then present and subject to cross-examination. *Id.* at 263 Ind. 58, 324 N.E.2d 484. Thus, one of the primary reasons for the application of the old hearsay exclusionary rule is missing: the unsusceptibility of the evidence to cross-examination. *Flewallen v. State* (1977), Ind., 368 N.E.2d 239, 241.

Since the witness' prior statement was properly admitted as impeaching evidence, any substantive effect would have been cumulative only, thus the trial court's refusal to give the tendered instruction limiting its use to impeachment purposes was not error.

### V.

Defendant McCall took the witness stand in his own defense and was subsequently cross-examined by the State as follows:

"Q. Mr. McCall, where do you live now?

A. Box 41, Michigan City.

Q. Is that Michigan City Prison?

A. Yes, sir.

Q. And you're serving time there?

A. Yes sir, I am.

Q. And what type of sentences?

A. Life."

At this point counsel for co-defendant Taggart approached the Bench and objected to any further questions concerning the nature of the offenses for which McCall was imprisoned. As grounds for the objection, Taggart argued that any testimony concerning prior convictions would prejudice him as the alleged leader of the organization which the State was attempting to establish in the present trial. While it is not clear from the record, the objection was apparently sustained and the prosecutor voluntarily withdrew his next question.

■ Appellant Gutierrez later indicated to the court that he desired to testify in his defense but was informed that if he did so, evidence of his prior convictions would be admissible for impeachment. Appellant chose not to testify and now claims that he was denied his constitutional rights of due process and equal protection by the Court's decision not to allow him to testify with the same benefit of restrictive cross-examination as was afforded McCall.

Appellant does not contend that his prior convictions were not proper subjects for impeachment under *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210. Nor does he contend that the trial judge was personally biased against him or that he is a member of a class of persons being discriminated against. We are thus unable to see how the substance of appellant's claim can be said to be a matter of constitutional proportions. With reference to McCall's testimony the trial judge simply made an

evidentiary ruling to Taggart's objection based upon facts and arguments presented at that time. When appellant sought a similar ruling, the court, based upon the facts and arguments, decided against him. The mere fact that the trial judge decided the two issues differently is not a matter of constitutional significance. As appellant's prior convictions would have been admissible under *Ashton*, appellant was in the same position as all other criminal defendants in Indiana: he was free to exercise his right to remain silent or to choose to testify and risk impeachment. There is no error here.

## VI.

Finally, appellant argues that the trial court erred in denying his motions for directed verdict at the close of the State's case and at the conclusion of all evidence, and that the jury's verdict was not supported by sufficient evidence.

In reviewing the sufficiency of evidence, this Court looks only to the evidence most favorable to the State along with any reasonable inferences to be drawn therefrom. In doing so, we do not weigh the evidence or judge the credibility of witnesses. If there is then substantial evidence of probative value supporting each element of the crime beyond a reasonable doubt, the verdict will not be disturbed. *Schilling v. State* (1978), Ind., 376 N.E.2d 1142, 1143; *Ruetz v. State* (1978), Ind., 373 N.E.2d 152, 156.

The evidence at trial disclosed that on the night of April 11, 1975, appellant was present at a meeting at the Merrillville Holiday Inn along with defendants McCall, Taggart and several others. Appellant informed the others that "the place closes at 1:00." After the meeting, appellant McCall, and two other men drove to the Sicilian Inn restaurant which closes at 1:00. Along the way, appellant told the others that if there were "too many kids in the place, don't do it." When the vehicle arrived at the Sicilian Inn, appellant got out and went inside the restaurant for a short time without talking to anyone inside. He then returned to the car and told the others that there were four or five kids in the gameroom, three people behind the counter, and Cathy, her boyfriend and Wozniak out front. He further stated that whatever happened, Cathy and her boyfriend had better not get hurt but to do "a good job on Wozniak." McCall and another man then went inside where they robbed and shot Richard Wozniak. When the two men returned to the car, they threw the victim's wallet to appellant, who counted the money and divided it among the group.

We find this evidence sufficient to support appellant's conviction of murder during the commission of a robbery. The evidence, of course, was also sufficient to withstand appellant's motions for directed verdict.

The judgment of the trial court is affirmed.

All Justices concur.