JACK RINER AND WAYNE EVANS *v.* STATE OF INDIANA.

[No. 871S225. Filed May 3, 1972. Rehearing denied June 19, 1972.]

*William C. Erbecker,* of Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

ARTERBURN, C. J.—Wayne Evans and his nephew, Jack Riner (a juvenile) were charged by indictment with first degree murder in the death of Edward M. Gibson on August 10, 1970, in Hendrick's County, Indiana, during the course of a burglary at Gibson's Trading Post. Defendants-Appellants were found guilty and sentenced to the Indiana State Prison for life. The case is before this court on an appeal from the Morgan County Circuit Court's denial of appellant's motion to correct errors.

The evidence giving rise to this prosecution is as follows. Edward Gibson and his brother Harold were owners of Gibson's Trading Post in Belleville, Indiana. Harold's home was about one mile southwest of the store and his brother, Edward, lived about a quarter mile due north. They both had burglar alarm monitors connected to the headboards of their beds. At three a.m. on the morning of August 10, 1970, Harold Gibson testified that he heard a loud noise over his monitor. He got out of bed and drove to the Trading Post after instructing his wife to call the Indiana State Police. He arrived on the west end of the store driveway, while his brother parked on the east end.

Harold was shot in the leg as he started walking toward the store. He testified that he saw someone going over a fence and shot at the fleeing figure. He then proceeded to the front of the building and found his brother holding his gun and yelling that he had been hit. Harold then testified that he saw a man or boy running across the neighbor's yard and

fired a few shots at him. He then saw a figure running across Road 40, got back into his car, drove across the road and got another glimpse of the man running behind a house. Harold Gibson testified that he could not identify the persons at the Trading Post that morning.

Ronald Riner (brother of defendant Jack Riner and nephew of defendant Wayne Evans) testified as a state's witness. According to this witness, he had been riding around with Wayne Evans and his brother Jack Riner in Wayne Evans' car on the evening of the killing. Sometime in the early morning, they approached a little town outside Terre Haute. Ronald Riner testified that he was asleep in the back seat when the car stopped and Defendant-Evans got out. According to Ronald Riner, Evans went back to the trunk and removed a plastic bag. Evans then came by the car and asked Jack Riner if he would go with him. Ronald Riner stated that he then laid back down in the back seat. He heard some shooting and observed several cars pulling up at a building to his right. Ronald Riner got out of the car and noticed someone, whom he believed to be Wayne Evans, running toward the car, who then turned east and went toward Plainfield. Ronald Riner testified that he was scared and ran into a field.

Jack and Ronald Riner and their uncle, Wayne Evans, were thereafter apprehended by police officials making separate arrests in the general vicinity of the Trading Post within a few hours of the shooting.

Ronald Riner further testified that Wayne Evans had related an account of the incident to him while they were confined in the Hendricks County Jail. The substance of that conversation, according to Ronald Riner, is that Wayne Evans stated that he had instructed Jack Riner to serve as a lookout while he attempted to force the door to the building. The cars of the Gibson brothers arrived at approximately the same time and that was when the shooting began. According to Ronald Riner, Wayne Evans related that he was shot at and returned

the fire. He ran east and was confronted by another man (presumably Edward Gibson) who began firing at him. By this account, Wayne Evans then shot the man.

For the purpose of brevity, we are combining some of appellants' contentions.

Appellants' first contention is that "an adult with a criminal record cannot be afforded the sanctuary of the Indiana Immunity Statute in testifying against a juvenile co-defendant for any reason and because of the failure of the State to comply with the Immunity Statute." In essence, this contention is that Ronald Riner's testimony was incompetent because he was not offered or granted immunity. The record is blank on this point. Appellants' contention is that since the record is barren as to compliance with the Indiana Immunity Statute, *Burns' Ind. Stat. Anno.*, § 9-1609 (1956 Repl.), Ronald Riner should not have been permitted to testify. Appellants have no rights under the Immunity Statute. The benefits of immunity are personal to the party who furnishes state's evidence. See *In re Subpoena Duces Tecum* (1948), 81 F. Supp. 418. We fail to understand how appellants can complain about the incompetency or credibility of this witness because no immunity was apparently given him for his testimony. Actually, credibility is weakened by offers of immunity and evidence of such an offer is competent to go to the jury. See 3 A WIGMORE, EVIDENCE § 967 (Chadbourn rev. 1970). As we said previously, this is a personal privilege of the witness, of which the appellants have no right to complain.

Appellants next urge that they were not furnished a copy of the statement of Ronald Riner until the morning of the trial. Appellants make no showing that they ever asked for such a copy or that they were surprised upon finding that there was such a statement. A party seeking discovery must move for such production. In this case the appellants did not do so. If the appellants were surprised (and there is no evi-

dence that appellants were) they should have asked for a reasonable time or continuance to examine and study the statement. We find no error presented to us in the respect under which complaint is made.

Appellants likewise complain that they were not furnished a list of the witnesses. The record shows, as a matter of fact, that appellants were furnished a list promptly upon defendants' motion and the granting of the motion by the court. We also point out that appellants failed to make this specific claim of error in their motion to correct errors and thus waived the matter.

Appellants next claim error because the prescriptions of *In Re Gault* (1966), 387 U. S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527, and *Kent v. United States* (1966), 383 U. S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84, were not followed in this case. Appellants' contention is promptly disposed of upon the reflection that this was not a juvenile trial in a juvenile court. Instead, the original jurisdiction was in the Circuit Court. Jurisdiction in the juvenile court exists only in cases where a juvenile "commits an act which, if committed by an adult, would be a crime *not punishable by death or life imprisonment.*" (our emphasis). *Burns' Ind. Stat. Anno.* § 9-3204 (1) (1971 Supp.).

In *State ex rel. Imel v. Municipal Court* (1946), 225 Ind. 23, 72 N. E. 2d 357, we stated in a similar situation, that the juvenile court had no jurisdiction and juvenile procedure would not apply. It necessarily follows that no hearing to determine the waiver of juvenile jurisdiction was necessary in this case. For the same reason, appellants' complaint that the probation officer failed to protect the interests of appellant Jack Riner, a juvenile, has no validity, since a probation officer's duties pertain to juvenile proceedings.

Appellants next complain of instances of improper conduct on the part of the prosecution. Appellants' specifications are rather scattered, indefinite and not detailed in any degree. We

have reviewed these contentions so far as possible. Most of them amount to leading questions asked by the prosecutor, some of which were withdrawn and others to which objections were sustained. We can find no substantial error in reviewing the numerous allegations in regard to the examination and cross-examination of witnesses by the prosecuting attorney.

Appellants complain that the prosecutor allowed a principal witness, Ronald Riner, to testify evasively and sometimes untruthfully to the knowledge of the prosecutor. This is an argumentative claim, and there is no evidence that the prosecutor was aware of any untruths. Even if the prosecutor knew there would be conflicts in the statements of witnesses or with other evidence in the case, it would have been his duty to reveal such facts to the jury and the duty of the jury to resolve the conflicts and to determine the credibility of the statements.

Other contentions are made to which appellants fail to show objections were made during the trial. They were thus waived.

Finally, appellants contend the court committed error in allowing the mother and daughter of the deceased victim to be in the court room in view of the jury and that the prosecuting attorney referred to the family of the victim while the daughter of the deceased victim was "holding a handkerchief to her eyes." Following the opening portion of the state's argument, appellants moved for a mistrial based upon such incident. There is no quoted reference in the brief of appellants as to exactly what the prosecuting attorney's remarks were at the time. It is well settled that this court will not search the record of the transcript to find out what the remarks were of which complaint is now made.

Appellants did, at the time, move the court to provide an inconspicuous place for members of the family to be seated following the opening argument of the state, and also asked that the prosecutor be admonished to refrain from any refer-

ences to the family in his closing argument. The court ruled that the family could remain seated where they were, but did instruct the prosecutor to refrain from any further comment regarding the victim's family. This was more than the court was required to do and could have unnecessarily limited or hindered the prosecuting attorney in making a full argument of the supporting evidence to the jury. Of this ruling certainly the defendants can not complain.

The United States Supreme Court has said as to the role of the prosecuting attorney, *Berger* v. *United States* (1935), 295 U. S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314, 1321,

"He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

It may be that the prosecuting attorney was asking for the death penalty and striking some "hard blows" against the defense, since the jury had the duty to recommend either death or life imprisonment.

The final ground urged for reversal by the appellant is that the verdict was not sustained by sufficient evidence. Much of appellants' contentions could more properly be styled as questioning the credibility of certain state witnesses. This court will not weigh the evidence nor resolve the questions of credibility, but will look to the evidence most favorable to the state and the reasonable inferences therefrom which support the verdict of the trial court or jury. *Washington* v. *State* (1971), 257 Ind. 40, 271 N. E. 2d 888; *Davis* v. *State* (1971), 257 Ind. 46, 271 N. E. 2d 893; *Grimm* v. *State* (1970), 254 Ind. 150, 258 N. E. 2d 407; *Sharp* v. *State* (1970), 254 Ind. 435, 260 N. E. 2d 593; *Smith* v. *State* (1970), 254 Ind. 401, 260 N. E. 2d 558; and *Langley* v. *State* (1968), 250 Ind. 29, 232 N. E. 2d 611. A conviction must be affirmed, if

having applied the rule, there is evidence of probative value, from which the trier of the facts could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Gann* v. *State* (1971), 256 Ind. 429, 269 N. E. 2d 381; *Asher* v. *State* (1969), 253 Ind. 25, 244 N. E. 2d 89. In this case, there was sufficient evidence to warrant the jury to return a verdict of guilty.

Judgment affirmed.

All Justices concur.

NOTE.—Reported in 281 N. E. 2d 815.