GERALD CUNNINGHAM, A. GARNETT DAY AND THOMAS OWEN RUSSELL *v.* STATE OF INDIANA.

[No. 671S162. Filed October 9, 1973. Rehearing denied December 11, 1973.]

*Charles A. Thompson,* of Indianapolis, *Irwin J. Prince,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—The appellants in this case seek a reversal of their conviction under the following statute, IC 1971, 35-19-4-4 [*Burns Ind. Ann. Stat.* § 10-4534 (1972 Supp.)]:

"*Interference with lawful use of public building.*—It shall be a misdemeanor for any person to go upon or remain within a public building for the purpose of interfering with the lawful use of such building by other persons or in such manner as to have the effect of denying to others the lawful use of such building. [Acts 1969, ch. 179, § 4, p. 457.]"

Appellants allege that the evidence was insufficient. On appeal, this Court does not weigh the evidence. We look at the record to see if there exists probative evidence which, when considered along with reasonable inferences therefrom, support the position of the Appellee. *Blackburn* v. *State* (1973), 260 Ind. 5, 291 N. E. 2d 686; *Riner* v. *State* (1972), 258 Ind. 428, 281 N. E. 2d 815, reh. den.; *Buise* v. *State* (1972), 258 Ind. 321, 281 N. E. 2d 93, reh. den.

From this point of view the following facts emerge from the record. The appellants entered a Selective Service office during working hours on the third day of March in 1970. They walked through the "work area" of the office placing a rose on each desk and distributing leaflets. They filled and crowded the "waiting area" so that those waiting for service had to be taken elsewhere. They were asked to leave, but refused. Finally, a policeman was called and they ignored his request to leave. Appellants also read the names of Indiana residents killed in the Vietnam war in unison in a manner described by one witness as "above a normal voice." As a result of all this activity a supervisor testified that her "girls . . . were not getting their work done."

It is clear from this recitation that appellants, who are presumed to have intended the foreseeable consequences of their intentional conduct, violated the statute by "going upon and remaining within a public building for the purpose of interfering with the lawful use of such building."

Appellants seek to prevent the application of this statute to their conduct by arguing that it violates Art. 4, § 19 of the Indiana Constitution:

"Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

Appellants suggest that the statute attempts to encompass two separate subject matters; namely, trespass and "loud and disturbing conduct." This argument misapprehends the nature of the statute. Appellants were not convicted for what they said or even for how they said it, but for the foreseeable effect of their intentional conduct—going upon and remaining within a public building for the purpose of disrupting work therein. The statute regulates only one matter—trespass, and a particular kind of trespass which is defined as a going upon or remaining within a public building with the intent of disrupting the work that goes on in that building.

Appellants next suggest that considering the social climate of the era during which the statute was passed (1969), the legislature intended the phrase "public building" to mean only a *university* building. Such a suggestion is without merit. The legislature could well have said "university" if it meant to. Moreover, the preceding section, IC 1971, 35-19-4-3 [*Burns Ind. Ann. Stat.* § 10-4533 (1972 Supp.)] is titled "Educational Institutions—Refusal to leave property on demand."

Appellants lastly argue that the statute is an unconstitutional limitation of First Amendment freedoms. This claim was rejected in *Campbell* v. *State* (1971), 256 Ind. 630, 271 N. E. 2d 463 where we said that:

"The right of free expression, guaranteed by the First Amendment to the Constitution of the United States, exists but as a unitary portion of a group of corollary rights, each of which can only be exercised to the extent that such does not encroach upon or erode the others. The States, within the limitations imposed by the

due process and equal protection requirements of the Fourteenth Amendment to the Constitution of the United States, may regulate and restrain the exercise of the freedom of expression, thereby insuring to all the freedom from the abusive exercise of the rights of others, including the right of free expression. Burns' § 10-4534, *supra*, is such an exercise of the States' power to restrain the abusive exercise of certain rights."

Appellants cite *Brown* v. *Louisiana* (1966), 383 U.S. 131, 15 L. Ed. 2d 637, 86 S. Ct. 719, for the proposition that certain public places are peculiarly appropriate for the exercise of rights of free speech when the content of the speech relates to the function of the particular public place. However, in *Brown, supra,* there was no evidence of disruption or an intent to disrupt, and the protest was against an illegal activity (segregated public library facilities). The Selective Service has not been declared unconstitutional.

In their briefs Appellants relied heavily on two previous cases involving the same statute and other draft-protests occurring during the same week in March of 1970. In *Campbell, supra,* a conviction was reversed. The defendant had sat silently in a corner of the Selective Service office with a sign which read "Draft Counselor." In other words, there was no evidence of disruption or an intent to disrupt. In *Quinn* v. *State* (1972), 258 Ind. 399, 281 N. E. 2d 478, a conviction was affirmed on facts significantly different from *Campbell, supra.* We there said that:

"The reading aloud of poetry and names of war dead on the part of Quinn and the singing of protest songs on the part of the other three appellants was a type of distraction calculated for interference and was substantially different from that present in the *Campbell* case." (281 N. E. 2d at 482)

Justices DeBruler and Prentice concurred in the result (281 N. E. 2d at 484) because of the additional evidence that "Quinn was reading in a loud and disturbing manner" and that "An employee of the office testified she was unable to work on a report. . . ." These cases support our decision in this case.

For all of the above reasons, the conviction is affirmed.

All Justices concur.

NOTE.—Reported in 301 N. E. 2d 638.