**Glen PROPHET, Petitioner-Appellee,**

v.

**Jack DUCKWORTH, Warden, Indiana State Prison, Respondent-Appellant.**

No. 78–1145.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1978.

Decided Aug. 11, 1978.

David A. Arthur, Deputy Atty. Gen., Indianapolis, Ind., for respondent-appellant.

Edward L. Volk, LaPorte, Ind., for petitioner-appellee.

Before PELL, TONE, and BAUER, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from the district court's grant of Prophet's petition for writ of habe-as corpus. The district court granted the writ because in Prophet's state court trial the prosecutor introduced evidence of a 1947 conviction in which Prophet was not given the right to a court-appointed counsel.[1] Although we agree with the district court that the introduction of the uncounseled prior conviction constitutes error under *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), we reverse because we are of the opinion that the error was harmless beyond a reasonable doubt.

In Prophet's 1958 state court trial he was convicted under Count 1 of inflicting injury during the commission of a robbery and under Count 2 of robbery and being an habitual criminal. His convictions on both counts were affirmed by the Indiana Supreme Court in 1960. *Prophet v. State*, 241 Ind. 57, 168 N.E.2d 189 (1960). The conviction on Count 2 was voided in 1972 pursuant to a post-conviction relief petition, but no relief was granted as to the conviction on Count 1. This action was affirmed by the Indiana Supreme Court. *Prophet v. State*, 262 Ind. 312, 315 N.E.2d 699 (1974). One year later Prophet filed his habeas petition which the district court granted in 1977.

During the 1958 trial the prosecutor introduced evidence of a 1947 conviction in which Prophet was without benefit of counsel and was not given adequate advice as to his right to court-appointed counsel. This evidence was introduced in support of the habitual criminal charge and before the jury deliberated on both counts. In *Burgett v. Texas, supra*, the Supreme Court held that the admission into evidence of a prior conviction obtained in violation of *Gideon v. Wainwright, supra* note 1, used to support guilt or enhance punishment was constitutional error. The prior conviction in the present case was introduced initially to support the habitual criminal charge which was voided by a post-conviction order. The prosecution, however, also raised

---

1. The right of an indigent to court-appointed counsel was established in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), well after Prophet's 1947 trial, but *Gideon* was applied retroactively in *Doughty v. Maxwell*, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964).

the prior conviction in an attempt to impeach Prophet during cross-examination.[2]

The use of constitutionally invalid prior convictions for impeachment purposes was addressed by the Court in *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972). The plurality opinion concluded that *Burgett* applied to such a use.

> Unless *Burgett* is to be forsaken, the conclusion is inescapable that the use of convictions constitutionally invalid under *Gideon v. Wainwright* to impeach a defendant's credibility deprives him of due process of law.

405 U.S. at 483, 92 S.Ct. at 1019. This conclusion follows from *Burgett* that use of a prior uncounseled conviction to impeach the defendant would be using it to support his guilt. The use of the prior conviction in the present case was, therefore, error. The critical issue, however, is whether the harmless error doctrine applies, and if it does, whether the error in this case was harmless.[3] The plurality opinion in *Loper* stated that "[i]n the circumstances of this case there is little room for a finding of harmless error, . . ." but did not foreclose the application of the harmless error doctrine to a different factual situation. *Id.* at 483 n. 12, 92 S.Ct. at 1019. Furthermore, Justice White's concurring opinion specifically suggested that on remand the lower court should consider harmless error. *Id.* at 485, 92 S.Ct. 1014. *See also Burgett v. Texas, supra* at 115, 88 S.Ct. 258; *Agee v. Wyrick*, 546 F.2d 1324, 1326 (8th Cir. 1976); *Gilday v. Seafati*, 428 F.2d 1027, 1029 (1st Cir. 1970).[4] Because the application of the harmless error doctrine depends on the circumstances of the particular case, we must turn to the facts in the present case.

Before doing so, however, we note that under *Chapman v. California, supra* note 3,

the error cannot be harmless if there is a reasonable possibility that the evidence may have contributed to the defendant's conviction. In the present case, therefore, the error would be harmless if: (1) the jury would have had to find Prophet guilty even if they believed his testimony *in toto*; or (2) because of the overwhelming nature of the evidence against him, the jury could not have reasonably reached a different verdict even if the prior conviction were not used. The second test is a formidable one because of the difficulty in determining how much weight a jury would give the defendant's testimony. We need not make that determination in the present case because the facts in this case satisfy the first test.

On March 5, 1958, the sheriff of Carroll County, Indiana, went to the State Police barracks in West Lafayette, Indiana to talk to Prophet and others regarding a burglary that had occurred in Carroll County the night before. Prophet admitted taking part in the burglary. The money was being held by the State Police in West Lafayette. The sheriff and his deputy obtained the money from the State Police in bags marked "Farmers State Bank of Frankfort" and "Attica Bank" and placed these bags in the trunk of the sheriff's car. The sheriff and his deputy then drove to the Tippecanoe County Jail where they took custody of Prophet, his accomplice Delk, and their wives, for return to the Carroll County Jail.

The sheriff's deputy drove the car. Prophet was seated in the front seat between the deputy and the sheriff. The others sat in the rear seat. Both Prophet and Delk were handcuffed with their hands in front of them. During the trip, Prophet and Delk overpowered the sheriff and the

---

2. The district court incorrectly stated that Prophet never took the stand in his 1958 trial. He, in fact, testified on direct, cross, and redirect examination.

3. Because the error is of a constitutional nature, it would justify granting the writ of habeas corpus unless we find it harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

4. *Prophet* places significant reliance on *Tucker v. Craven*, 421 F.2d 139 (9th Cir. 1970), and *Beto v. Stacks*, 408 F.2d 313 (5th Cir. 1969), both of which preceded *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), and which did not involve defendants who took the stand and were impeached with prior uncounseled convictions.

deputy, took the sheriff's gun, and drove off in the car.[5]

At about 4:25 p. m. that day, the State Police found the sheriff's car abandoned in a rock quarry. They also found Prophet and the two women and arrested all three. Prophet had the sheriff's gun, three wallets, eighty-one dollars in bills, and several loaded cartridges. Two or three days later, the bag marked "Farmers Bank of Frankfort" was found at the place where the car had been abandoned.

Prophet was convicted of robbery, infliction of physical injury while engaged in the commission of a robbery, and being an habitual criminal. The only conviction remaining after the 1972 post-conviction relief was that for infliction of physical injury during a robbery. We therefore, look to the relevant portion of Prophet's testimony to determine whether, if the jury believed him, the verdict could have been different.

Prophet testified as follows. While riding in the front seat between the deputy and the sheriff, he signaled to Delk in the back seat to "be on the lookout." At that moment Prophet jammed his foot on the brake causing the car to go into a skid. He then began scuffling with the deputy who, within a few moments, fell out the door of the car. Prophet then turned to the sheriff who was battling Delk. Prophet attempted to knock a gun out of the sheriff's hand. He thought he knocked the gun out of the sheriff's hand, and after that did not see the gun. While he and Delk were struggling with the sheriff, the sheriff was shot. Prophet was not touching the gun when it fired.[6] Shortly thereafter, the sheriff got out of the car. Prophet noticed the gun on the front seat and picked it up. He started to get out of the car to pursue the sheriff when the sheriff told him that he surrendered. Prophet then slid across the seat, dropped the gun on the seat, and started to get out the other door. He saw the deputy loading a gun and so instead of getting out of the car, he started the car and drove away.

Although the testimony of the sheriff and the deputy differed significantly from Prophet's, even if the jury believed Prophet's version, we are of the opinion that the jury would have had to convict. Prophet argues that he would not have been convicted under his version because he did not touch the gun at the time the sheriff was shot. Under Indiana law, however, Prophet would have committed the crime of inflicting physical injury during the commission of a robbery regardless of whether he fired the gun.[7] One who aids in the commission of a felony may be tried and convicted the same as the principal. Ind.Code Ann. § 35-1-29-1 (Burns);[8] see also Tibbs v. State, 255 Ind. 309, 263 N.E.2d 728 (1970). In a case charging assault with intent to kill, although the defendant as an accomplice did not fire the shots, he was charged the same as a principal. Johnson v. State, 258 Ind. 648, 283 N.E.2d 532 (1972). See also Jewell v. State, 261 Ind. 665, 668, 309 N.E.2d 441, 442 (1974) ("this statute embodies 'a fundamental principle of our criminal law' and 'covers all felonies.' ") Therefore, if we assume Prophet did not fire the gun, either Delk or the sheriff fired it. If Delk fired it, Prophet would be guilty the same as Delk because Prophet admitted that he and Delk acted together in attempting to overcome the sheriff. If the sheriff fired

---

5. Prophet was not indicted for robbery of the car. The robbery charged in the indictment was only of two guns and a certain amount of money.

6. Contrary to his testimony at trial, Prophet stated in a tape recording made by Sheriff Miller that he (Prophet) had hold of the gun when it fired. This tape recording was introduced as State's Exhibit # 16.

7. The statute provides in relevant part:

Whoever inflicts any wound or other physical injury upon any person with any firearm, dirk, stiletto, bludgeon, . . . [etc.] while engaged in the commission of a robbery, or while attempting to commit a robbery, shall, upon conviction, be imprisoned in the state prison for life.

Ind.Code Ann. § 35-13-4-6 (Burns).

8. This statute was repealed on October 1, 1977 and replaced by § 35-44-3-2, but the new statute does not apply retroactively. See Ind.Code Ann. § 35-1-1-1 (Burns).

it, we can assume he did not intend to shoot himself and thus the discharge of the gun would have been a direct result of the struggle with Prophet and Delk sufficient to convict either.[9]

Prophet also argues that if the jury believed his version of the facts, he would not have been convicted because the infliction of physical injury occurred *before* the robbery, not during it as required by the statute. His testimony indicates that he did not take possession of the gun until after the scuffle and after the sheriff had gotten out of the car. His analysis, however, would require the injury to be inflicted at precisely the moment the taking occurred. This rigid segmentation of conduct does not comport with the language or purpose of the statute. Indeed, the typical application of this statute is in circumstances in which the defendant inflicts injury to overcome the victim and then takes the property. *See, e. g., Jackson v. State,* 260 Ind. 61, 291 N.E.2d 892 (1973).

The present case is distinguishable in that arguably Prophet did not intend to commit the robbery until after the infliction of injury, whereas in the typical case, the intent to commit the robbery occurs before the infliction of injury. Although we could find no cases on point, we do not think this distinction changes the result in the present case. The language of the statute does not appear to require that the intent to commit a robbery precede the infliction of injury, nor should it. That the infliction of injury occurs contemporaneously or within the common nucleus of events as the robbery and its requisite intent is, in our opinion, sufficient.

For the reasons stated herein, we hold that the introduction of the uncounseled prior conviction constituted error, but that

the error was harmless beyond a reasonable doubt. Therefore, the judgment of the district court is reversed.

REVERSED.

---

9. Even if the gun was fired accidentally, Prophet would have satisfied any intent requirement that might be read into the statute. He knew that the sheriff had a gun and reasonably would have assumed that the gun might be fired during the scuffle and might injure the sheriff. Under Indiana law, intent is a mental function, the existence of which may be determined by resort to inferences based upon examination of the surrounding circumstances.

*Cooper v. State,* 332 N.E.2d 843 (Ind.App. 1975). Moreover, if the accused is sane and of an age of discretion, he is presumed to intend the necessary or the natural and probable consequences of his unlawful voluntary act, knowingly performed. *See United States v. Randall,* 164 F.2d 284 (7th Cir. 1947), *cert. denied,* 333 U.S. 856, 68 S.Ct. 729, 92 L.Ed. 1136 (1948); *Cunningham v. State,* 261 Ind. 256, 301 N.E.2d 638 (1973).