**Yvonne BULLOCK, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 2–678A202.**

Court of Appeals of Indiana, Second District.

Dec. 10, 1979.

Robert G. Mann, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Philip R. Blowers, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

### CASE SUMMARY

Defendant Yvonne Bullock (Bullock) appeals from her conviction under the Offenses Against Property Act for shoplifting, challenging the trial court's denial of her motion to dismiss. The motion was based on the alleged failure of the prosecutor to abide by an agreement whereby the defendant's shoplifting charge would be dismissed in exchange for her testimony in the trial of an unrelated case.

We affirm.

### FACTS

The facts most favorable to the State are:

Bullock testified before a grand jury in an arson-felony murder case against one Lonnie Fowler (Fowler). *Following that testimony,* she entered into an oral agreement with the prosecutor, whereby the shoplifting charge as well as another pending charge against her would be dismissed if she testified at Fowler's trial.[1] She was subpoenaed in the Fowler case and went to

---

1. In her brief the defendant characterizes this as her promise to "cooperate."

court several times in order to testify; however, each time the Fowler case was continued, and she was never called to the stand. Eventually the State dismissed the Fowler case.

Subsequently, Bullock was tried for shoplifting. In her motion to dismiss, she contended the State should be bound by the agreement, inasmuch as the State had prevented her from completing her part of the bargain. The court, after conducting a hearing, denied the motion. The trial judge ordered that any evidence obtained as a result of the agreement should be suppressed. After a trial, Bullock was convicted.

## ISSUE

The sole issue presented here is whether the trial court erred in denying the motion to dismiss, or more precisely, is the State bound to abide by the agreement?

## PARTIES' CONTENTIONS

Bullock's argument is in two parts: first, integrity of the legal process requires dismissal; second, the agreement was a contract which should be enforced.

The State responds that the trial court was not bound by the agreement under either theory.

2. Although we reject the notion that a case such as this is properly resolved by contract law, we address the argument only to expose its frailty.

3. The *Dube* holding has never been extended beyond the context of a plea bargain. *See, e. g., McMahan v. State* (1978), Ind., 382 N.E.2d 154; *Kelly v. State* (1972), 259 Ind. 414, 287 N.E.2d 872.

4. Nor did the agreement constitute any legally recognized "immunity." This is true for two reasons. First, it is not within the purview of *Ind. Code* § 35–6–3–1, nor were the procedures outlined in that statute followed. Second, and more basically, the concept of immunity properly extends only so far as the right to be free from compelled self-incrimination under the fifth amendment of the United States Constitution and Article I, Section 14 of the Constitution of the State of Indiana. *See generally* 21

## DECISION

*CONCLUSION*—The court did not err in denying the motion, because none of defendant's rights were violated and the agreement was not an enforceable contract.[2]

Bullock casts her lot with two cases, *Santobello v. New York* (1971), 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427, and *Dube v. State* (1971), 257 Ind. 398, 275 N.E.2d 7. Both involve broken agreements concerning plea bargains.[3] In each case the defendant pleaded guilty in reliance upon a prosecutor's promise concerning a recommended sentence; in each the State failed to live up to its side of the bargain; in each the Court held there was a violation of constitutional rights.

██ These cases are alien to Bullock's situation. That the agreement here does not rise to the equivalent of a plea bargain is plain.[4] A defendant entering a guilty plea forfeits certain rights, including the right to a jury trial, to confront witnesses, to present witnesses in his defense, to remain silent, and to be convicted by proof beyond a reasonable doubt. *Santobello*, 92 S.Ct. at 500 (Douglas, J., concurring). Thus, if the plea is unfairly obtained, it is not voluntary and so constitutes a violation of a defendant's rights. *See id.* at 499.

Bullock forfeited none of these rights,[5] and she does not argue that any rights were

*Am.Jur.2d, Criminal Law* §§ 146–148. Thus, while Bullock could have been accorded immunity from prosecution in the Fowler case (where the State suggests she was a suspect) in exchange for her testimony, such immunity could not extend to bar prosecution in this unrelated proceeding. Indiana courts have construed immunity statutes narrowly. *See e. g., Riner v. State* (1972), 258 Ind. 428, 281 N.E.2d 815; *Michaelree v. State* (1929), 92 Ind. App. 147, 168 N.E.2d 27.

5. During the hearing on the motion to dismiss, Bullock testified that she waived her right to a jury trial in reliance upon the promise that the charge would be dismissed. After denying the motion to dismiss, the court granted her request for jury trial; however, she later withdrew that request and asked for trial by the court.

forfeited.[6] She entered a plea of not guilty to the charge and received a fair hearing. This was the same due process accorded the defendant in *Dube, supra.* There our Supreme Court remanded the case to allow the defendant to withdraw his guilty plea. The Court did *not* order the result which would have obtained if the State had performed its part of the agreement. Nor did the United States Supreme Court fashion any such order in the *Santobello* case. There the Court remanded the case to the state court for a determination of the proper relief, leaving that question to the discretion of the state. *See Gross v. State* (1975), Ind.App., 338 N.E.2d 663, 665 n.4. Specific performance is not constitutionally mandated by every instance of a broken prosecutorial bargain.

▮ Notwithstanding this fact, Bullock insists that the integrity of the legal system requires dismissal here. Such a question is not of constitutional dimension, although it may be covered by legislative enactment. *Cf. United States v. Russell* (1973), 411 U.S. 423, 433, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366, 374 (entrapment). The decision whether to prosecute is lodged in the executive branch of government. If no rights have been violated, and in the absence of a directive from the legislature or our Supreme Court, we cannot exercise a "chancellor's foot" veto over the executive branch.

▮ Moreover, Bullock's contract claim that she forfeited something by appearing in court for the purpose of testifying is specious. She had no right to refuse the subpoena. *See Ind. Code* § 35–1–31–1. Nor had she any right to testify falsely if called to the stand, *see United States v. Wong* (1977), 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231, and her previous grand jury testimony could have been used to impeach her. If she had a right not to testify as to

self-incriminating matters, her remedy was to invoke that right when questioned. *See Ind. Code* § 35–6–3–1. *At the hearing on the motion, the defendant admitted she was not prejudiced in any way by her courtroom appearances.* She did not rely on the agreement to her detriment.

So even under accepted principles of contract law, this was not an enforceable bargain. Bullock did only what she was already legally bound to do. The State's promise was nothing more than a gift, unaccompanied by elements of promissory estoppel. It certainly was not the "deceptive contrivance" the defendant alleges, and the State cannot be held to a bargain unenforceable between private parties.

For these reasons, the trial court committed no error in denying the motion.

Affirmed.

ROBERTSON, J. (by designation), concurs.

SHIELDS, J., dissents with opinion.

SHIELDS, Judge, dissenting.

I dissent.

In my opinion the State is bound to abide by its agreement with Bullock.

While the agreement between the State and Bullock was not a plea bargain in the sense it required Bullock to plead guilty to any pending criminal charges, it was nevertheless an agreement for which Bullock gave consideration. She waived her right under Indiana Rules of Procedure, Criminal Rule 4(c), to a trial within a year.[1] Bullock's trial was continued on several occasions ". . . because we didn't want to go to trial on her case until she had been a witness in that (Fowler) case."

---

6. We therefore decline to address the issue, raised *sua sponte* in the dissent, concerning effectiveness of counsel. Our Supreme Court has made clear the heavy burden which rests on an appellant raising such a claim. *See e. g., Grimes v. State* (1977), 266 Ind. 684, 366 N.E.2d 639; *Conley v. State* (1972), 259 Ind. 29, 284 N.E.2d 803.

1. In addition, Bullock apparently agreed to waive her right not to incriminate herself inasmuch as she was a suspect, with Fowler, in the arson-felony murder case. The record is unclear whether she had in fact waived this right by testifying before the grand jury on the Fowler matter under the agreement with the State.

In addition, defense counsel's effectiveness was seriously undercut by the State's conduct. As recognized in *Cooper v. United States,* (1979) 4th Cir., 594 F.2d 12, pp. 18–19.

We begin by noting that two distinct sources of constitutional right are involved here; most obviously and directly, the right to fundamental fairness embraced within substantive due process guarantees; less directly perhaps, but nonetheless importantly, the Sixth Amendment right to effective assistance of counsel. The general relevance of the former is too plain to require discussion. That of the latter can be readily stated. Because prosecutors are required to conduct plea negotiations through defense counsel, the government's positions and communications in plea discussions are necessarily mediated to the defendant through his counsel. * * * For this reason, not only the credit and integrity of the government but those of his counsel are involved in a defendant's perception of the process. * * * *To the extent that the government attempts through defendant's counsel to change or retract positions earlier communicated, a defendant's confidence in his counsel's capability and professional responsibility, as well as in the government's reliability, are necessarily jeopardized and the effectiveness of counsel's assistance easily compromised.* At the very least, these Sixth Amendment considerations add a heightened degree of obligation to the government's fundamental duty to negotiate with scrupulous fairness in seeking guilty pleas. (Our emphasis.)

While *Cooper, supra,* dealt with the government's attempted withdrawal of an offered plea bargain, the rationale behind the enforceability of a plea bargain is appropriate to the enforceability of any bargain offered a defendant by the State in exchange for any consideration from or detriment to the defendant. The *rationale* is our need to protect the credibility and integrity of the criminal justice system in all its component parts. Therefore, as in *Cooper, supra,* I find a right to enforcement of an agreement may indeed arise despite the fact the agreement does not encompass a guilty plea.

There is no dispute as to the content of the agreement insofar as it is described in the majority opinion. The only reasonable interpretation is Bullock agreed to fully cooperate with the State in its prosecution of Fowler. Undisputedly, she did so. Thus, she fully performed while at the same time the State was exposed to no risk. That Bullock was unable to testify at Fowler's trial was the "fault" of the State, not Bullock. For reasons not evident in this record, the State apparently felt Bullock's testimony was so essential to the Fowler prosecution they were unwilling to rely on Bullock doing "what she was already legally bound to do," as it is described by the majority opinion. Rather, the State, albeit rashly or unwise, sought to assure her cooperation by making a deal. By so doing, the State sealed its fate and now, in my opinion, must fulfill its agreement. When an agreement, specific, unambiguous, and not unreasonable on its face, is made by a defendant and the State, the agreement is enforceable unless extenuating circumstances affecting the propriety of the agreement that were unknown or not reasonably discovered by the State supervene or become known or unless the defendant breaches the agreement.

Therefore, obviously, but perhaps regretfully, I hold the opinion there is no effective remedy but to require specific performance of the agreement. I would reverse and remand with instructions to the trial court to order Bullock's discharge.