CALLAHAN *v.* STATE OF INDIANA.

[No. 30,807. Filed March 9, 1966. Rehearing denied April 27, 1966.]

*William C. Erbecker,* of Indianapolis, for appellant-petitioner.

*John J. Dillon,* Attorney General, *Donald R. Ewers,* Assistant Attorney General, and *Virginia Dill McCarty,* Deputy Attorney General.

ARTERBURN, J.—The appellant Callahan has filed a verified petition for a writ of certiorari in which he asks that we review the action of the trial court in denying permission to file a belated motion for a new trial in a criminal case in which he was convicted of murder in the first degree. The conviction was affirmed by this Court on appeal. See *Callahan v. State* (1964), 246 Ind. 65, 201 N. E. 2d 338.

His conviction resulted following a trial in which it was revealed he had killed a police officer in cold blood after he had been arrested fleeing in an automobile from the scene of a burglary. At the time of his arrest he thrust a gun at the officer and said: "Forget it, you're dead" and proceeded to fire several shots at close range into the body of the officer. The evidence clearly established his guilt.

He files his petition for certiorari in this Court, consisting of nearly 85 pages, accompanied by a brief of 125 pages. Most of it is taken up with the recital of various alleged errors occurring during the trial, such as erroneous instructions, a defective indictment, objections to evidence introduced, disputing the statement of witnesses and claiming they committed perjury, among other things. We have gone through this voluminous petition, comparing it with what took place in the trial and what was set forth in the motion for a new trial, the overruling of which was appealed to this Court and affirmed. We find that practically everything was or could have been previously presented for the trial court's consideration and our consideration on appeal.

As we look upon the petition here, it is basically a situation, as happens so often, where a party sees fit to try a lawsuit in a certain fashion, omitting to make objections for reasons that might seem sound at the time, and then after losing the

law suit, uses such failures or such maneuvering as grounds for a new trial. In this case counsel was employed by the defendant and his family and relatives at their own expense. They had an attorney of their own choosing. Now, new counsel employed for this petition of certiorari, claims that such trial counsel acted incompetently, and sets out in detail all the alleged things that the trial counsel should have done in retrospect.[1] It is stated now that the petitioner has finally employed "a competent attorney to represent and advise him in this cause."

This question is presented frequently to our Court after a defendant has been convicted. It is easy to second-guess a trial attorney after the losing of a case, and to claim he should have acted differently.

Petitioner contends he was denied a fair trial by reason of newspaper and television publicity, etc. These are all matters that were considered in the trial court and on appeal in the original case. It is interesting to note, however, that now the petitioner contends also that he was denied due process on the complaint that the public generally was excluded from his trial because only a limited number of persons were permitted in the court room. No objections were made during the trial on either of these inconsistent claims made now. As we stated previously, regardless of what an attorney does in a trial in a criminal case, it seems he can never satisfy his client if he loses the case.

It is contended here that the statute under which the petitioner was convicted was unconstitutional because it was discriminatory in that it prescribed the death penalty in homicides committed in the perpetration of a burglary, but not in the perpetration of kidnapping, bank

---

1. It is noted that the petition also states: ". . . that he does not contend or maintain, that _____, his former attorney, is not or was not a competent attorney, and a respected member of the bar of this court, and an intelligent and competent attorney; defendant forcefully contends that he was denied effective assistance of counsel . . . by the merely perfunctory and casual representation by said _____ in this particular case. . . ."

robbery, etc. This question could have been raised properly in the trial court in the beginning if the trial attorney had thought there was any merit. We think the trial attorney was intelligent enough and competent enough not to raise such a question. The Legislature has some discretion in this state with reference to fixing crimes and the punishment thereof. That is one of the fundamentals of our government, and it hardly needs citations of authority for such statement.

A further contention is now made that the defendant was confined for eleven months awaiting trial and that Burns' Ind. Stat. Anno. § 9-1403 (1956 Repl.) is an inequitable and discriminatory statute which provides that no defendant shall be held for more than three terms of court awaiting trial. It is pointed out that terms of court vary in counties over the State of Indiana and therefore an inequality exists. This question could have been raised in the trial court if there had been any merit to it. Admitting, for the purpose of argument, that this statute does not work uniformly and therefore might be unconstitutional, it does not follow that the petitioner's constitutional rights were violated in that he was deprived of speedy trial. There is no evidence that the statute was invoked against petitioner and as a result he was deprived of a speedy trial. If the statute is unconstitutional, that fact alone avails a party nothing, unless as a result petitioner failed to get his constitutional right.

If a defendant feels he is not receiving a speedy trial, he should ask for a prompt trial. He cannot stand by and say or do nothing, then complain *after trial*. The time to complain is before trial. Again we point out that the trial court and the State are on the horns of a dilemma in a situation such as this. If the court and the State insist upon an immediate or a fairly prompt trial and the defendant, not objecting, goes to trial and he is convicted, he can contend that he was forced too quickly into the trial without proper time for preparation

and investigation. On the other hand, if a court gives the State, as well as the defendant, a reasonable time within which to prepare for trial, then, if the defendant loses, he will contend (as in this case) that he has been denied a speedy trial, although he made no insistence upon an earlier trial prior thereto. In other words, whatever the court does, the defendant in a losing case contends he has been deprived of his constitutional rights.

He claims that it is impossible for him to waive such rights by failing to ask or insist upon such rights in the trial court. This shows the ridiculous and preposterous results which follow from the assumptions of the petitioner's contention here that he cannot waive such objection or right. If the defendant is tried early and loses the case, he will contend he has not had sufficient time to prepare for trial. If he is tried later, he will contend the trial was delayed too long, in violation of his constitutional rights. There is no showing whatever in this case that the defendant was harmed by the trial taking place at the time that it did or that he made any objections to any delay.

We point out again the inconsistencies of petitioner's position. He now claims that the attorney of his own choice who represented him during the trial, "shared office space with and was connected with" a law firm which was counsel for the sheriff and therefore there was an incompatibility in his relationship. There is no allegation that the petitioner did not know of this relationship when he employed the attorney of his own choice, and it occurs to us that the alleged relationship might have been one of the motives for the employment of such an attorney. The relationship with the sheriff's office might have been such that the petitioner thought his attorney could obtain more information and receive more accommodations than otherwise. Now, however, the petitioner, having lost his case, desires to use such choice as a reason and grounds for urging that his attorney did not properly represent him.

Appellant now claims an alibi, but no such pleading was filed or claim made at the trial, as required by statute. He claims he was at some other place when the shooting took place, although the evidence is undisputed from the accomplices and his companions at the time that the defendant was not only present, but did the actual shooting. There was no question as to his identity at the time. As stated in the opinion rendered on his appeal, it was claimed that they were frightened away from the scene of the burglary by an alarm and that they (including petitioner) had merely returned to recover some of their tools. "Therefore appellant contends that the shooting of the decedent was an act independent of the burglary." His attorney appears to us to have been acting very astutely in attempting every conceivable legal defense that could have been made against the petitioner's charge of murder in the first degree. We find no incompetency on the part of his trial attorney in the record of this case.

In *Groover* v. *State* (1959), 239 Ind. 271, 280, 156 N. E. 2d 307, 311, we said:

> "Appellant has argued the incompetency of counsel at great length. It is true that counsel did not interrogate the jurors on voir dire, examine the witnesses, form the instructions or argue the case to the jury with great astuteness or powerful persuasiveness. However, counsel who was of appellant's choosing was confronted with a most difficult case. . . . Under the circumstances counsel did not attempt to deny the heinous character of the offense, but instead asserted temporary insanity and sudden heat of passion in defense of his client. The jury did not accept the plea of insanity but concluded that the killing was with premeditation. Other counsel might have tried the case with different strategy and greater skill, *but we cannot say that the consequences would have been different.* (Emphasis added)"

In *Hendrickson* v. *State* (1954), 233 Ind. 341, 344, 118 N. E. 2d 493, 495, we stated:

> ". . . When a defendant employs an attorney he places the conduct and management of his defense in that attorney's

hands. Frequently, even the best of attorneys made decisions during the course of a trial which later may appear to have been errors in judgment. This is a natural result of the imperfections of man and are circumstances which can not be avoided and must be expected. We cannot 'second guess' a trial attorney and reverse a case simply because some other attorney might, under the attending circumstances, have pursued a different course."

We said in *Tait v. State* (1965), 246 Ind. 577, 205 N. E. 2d 317, 320:

". . . So, the purpose of a belated motion for new trial is not to authorize a court to review and revise its opinions on matters which are based on facts already adjudicated, but to consider new elements which could affect the judgment materially if they had been brought before the court at the time of trial, providing, of course, there was no negligence or lack of diligence on the part of the party affected."

It is contended that a party to a law suit, such as this petitioner, should not be bound to exercise diligence through himself or his attorney. It is our opinion that the orderly procedure of due process requires that the parties act promptly and diligently in bringing matters before the court. There can be no process known as even "a trial" if all rules are abandoned which are used for the purpose of reaching the merits of a case. A case cannot be strung out indefinitely by bringing one issue after another before a court in piecemeal fashion at the option and with the delays which a defendant may see fit to use. Judicial procedure would have no orderliness, but in fact, it would be chaotic if we were to recognize the contention that a party is not bound to use diligence and act promptly in presenting his side of a law suit.

The petitioner has attempted to string out endless technical contentions regarding the trial and appeal. The ultimate purpose of a criminal trial is to determine the guilt or innocence of a defendant. It is not a game in which technical issues should be permitted to overshadow the real question of guilt. It is humanly impossible to hold a trial, no matter how many are granted, without some slight

irregularity. The question, when properly and timely presented is: Did such possible error change the result of the case? There is nothing presented which shows the result would have been otherwise than a conviction of the petitioner.

The petition for writ of certiorari is denied.

Rakestraw, J., concurs. Jackson, J., concurs in result. Myers, C. J. and Achor, J., not participating.

NOTE.—Reported in 214 N. E. 2d 648.