**Raymond L. ROARKS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 54A04–8706–CR–193.**

Court of Appeals of Indiana,
Fourth District.

Dec. 14, 1987.

Rehearing Denied Jan. 27, 1988.

Susan K. Carpenter, Public Defender, Hope Fey, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

Raymond L. Roarks is now serving a fifty year sentence for burglary and habitual offender. One of the underlying offenses to the habitual offender finding was a 1977 forgery conviction entered after a guilty plea. In 1985, Roarks filed a post-conviction relief petition (PC1) seeking to set aside the 1977 forgery conviction. When that petition was denied on August 30, 1985, Roarks failed to perfect an appeal. However, six months later he filed a petition for permission to file a belated motion to correct errors (PC2), which was also denied. Roarks now appeals the trial court's denial of his petition for permission

1. Roarks raised the following grounds for vacating or correcting his forgery conviction and sentence in his PCR petition: (1) the court did not inform Roarks that the court was not a party to nor bound by the plea agreement; (2) the court did not inform Roarks that CR74–3

to file a belated motion to correct errors. The trial court found Roarks had failed to show that he was not at fault for failing to timely file a motion to correct errors. Roarks challenges the court's conclusion as contrary to law because (1) he was not advised by the trial court of the dangers and disadvantages of proceeding *pro se* on his petition for post-conviction relief, (2) he was not advised how to appeal from an adverse ruling on this *pro se* petition, and (3) denial of his petition violates due process.

## FACTS

Raymond L. Roarks pled guilty, pursuant to a plea agreement, to Uttering a Forged Instrument and on February 18, 1977 was sentenced to an executed term of not less than two nor more than fourteen years. The plea agreement obligated the State to dismiss a second charge and to stand mute at sentencing. The State did, however, refer to Roarks' criminal history at the sentencing hearing.

Eight years later, on January 14, 1985, Roarks filed a petition for post-conviction relief[1] and several other *pro se* motions including a motion for self-representation. In this motion, the defendant asserted:

"(1) Petitioner seeks to exercise his right to self-representation and present his own evidence and witnesses.

(2) Petitioner asserts that he is aware of the extent and importance of the possible consequences in the fact that he will represent himself in this action.

(3) Petitioner waives his right to the services of the Indiana State Public Defenders Office.

(4) Petitioner states he is fully aware of the nature of self-representation.

(5) Petitioner seeks to make a clear and unequivocal request to proceed *pro se* as a prerequisite to the assertion of the right of self-representation."

was under action in the Indiana Supreme Court and (3) the court did not justify why Roarks was confined in jail without a bond revocation hearing. Roarks did not raise the issue of whether the State had complied with its obligation under the plea agreement to stand mute at sentencing.

Roarks signed this motion. Gary Wayne Taylor, inmate # 23027, assisted Roarks in the preparation of this motion.

Before the hearing on his post-conviction petition, the trial court questioned Roarks about his decision to proceed *pro se.*

"COURT: Mr. Roarks, as I understand it, you want to represent yourself in connection with this, is that right?

A. That's right.

COURT: Now you understand that you are entitled to an attorney if you'd like to have one?

A. Yes, I do understand.

COURT: And you have thought about it and talked with others and decided that you wanted to go ahead on your own, is that right?

A. Yes sir.

COURT: Okay, are you ready to do that?

A. Yes sir.

COURT: Okay, you may proceed."

At the evidentiary hearing held on August 26, 1985, Roarks failed to present any evidence that the State had breached the plea agreement by reference to his criminal history at the sentencing. Roarks' petition was denied on August 30, 1985 and the order denying the petition was entered by the clerk on that day. The record contains no indication that the clerk notified Roarks of the ruling and no timely motion to correct error was filed. Roarks continued to serve a fifty-year sentence for robbery and habitual offender. The instant conviction underlies the finding that Roarks is a habitual offender.

Six months later, on March 12, 1986, Roarks filed a petition for permission to file a belated motion to correct error. The State Public Defender appeared and amended the petition, and a hearing was held on October 31, 1986. Roarks asserted he did not learn of the denial until June or July of 1986 and his failure to timely file a motion to correct errors was not his fault for three reasons: (1) he was subject to to several general and personal administrative lockdowns which restricted his freedom, his movement, his access to the law library in prison and his access to other prisoners from whom he learned much of what he

knows of the law; (2) he was involved in other litigation in the U.S. District Court; and, (3) he was not aware of his obligation to file a Motion to Correct Errors within 60 days of the court's ruling and he was not advised of his right to an attorney to take the appeal from an adverse ruling on his motion to correct errors.

The court denied Roarks' petition for permission to file a belated motion to correct errors on grounds that Roarks had failed to show, by a preponderance of the evidence, that he was not at fault for failing to timely file a motion to correct errors. The trial court noted that Roarks did not lose his mail privileges, his ability to communicate with and seek advice from other inmates, or his ability to request the assistance of counsel. The court found no statutory or case law duty imposed upon the court to notify Roarks of its ruling or to advise him of his options or choices regarding appeal. The court found Roarks, a knowledgeable defendant, had a duty to be aware of his own case and interests and to follow up on matters that affect them.

Roarks now appeals this decision as contrary to law because (1) he was not advised by the trial court of the dangers and disadvantages of proceeding *pro se* on his petition for post-conviction relief, (2) he was not advised how to appeal from an adverse ruling on this *pro se* petition, and (3) denial of his petition for permission to file a belated motion to correct error violates due process because he was denied the right to challenge the validity of a prior conviction used in recidivist proceedings.

## DECISION

■ Post–Conviction Rule 2 provides in relevant part:

"SECTION 1. Any defendant convicted after a trial or plea of guilty may petition the court of conviction for permission to file a belated motion for new trial, where:

(a) no timely and adequate motion to correct error was filed for the defendant;

(b) the failure to file a timely motion to correct error was not due to the fault of the defendant; and

(c) the defendant has been diligent in requesting permission to file a belated motion to correct error under this rule.

The trial court shall not consider the merits of the motion, but shall determine whether there are grounds for allowing the belated motion to correct error to be filed. Any hearing on the petition shall be conducted according to Sec. 5, Rule PC 1."

Post–Conviction Rule 2 on its face is a rule established to permit, under some circumstances, a defendant who has missed the deadline for filing a motion to correct error to perfect a direct appeal raising any error in the record appropriate on direct appeal. For those defendants who have pled not guilty and been tried, convicted, and sentence, direct appeal may include possible error in trial, conviction, or sentencing. For those defendants who have pled guilty and been convicted and sentenced, direct appeal may raise potential error in pleading, conviction, or sentencing. Post–Conviction Rule 1, which is not a substitute for direct appeal, provides the defendant with an opportunity to raise constitutional questions, jurisdictional issues, or to attack the validity of his conviction or sentence on other specified grounds. Under PC1, the appeal is perfected by filing a verified petition at any time. Under PC2, the direct appeal which has been waived by failure to file a motion to correct error within 60 days of judgment may be reinstated with the trial court's permission to file a belated motion to correct error. Roarks is attempting to use PC2, designed for use to gain a belated direct appeal of original trial guilty plea, conviction or sentence, to a petition filed under PC1.[2] Assuming arguendo that PC2 does apply to the belated filing of a motion to correct error in a PC1 petition, the granting of a belated motion to correct error is at the sound discretion of the trial court. Unless it is demonstrated that the trial court abused its discretion, or that its

determination is contrary to law, it will not be disturbed. *Campbell v. State* (1985), Ind., 483 N.E.2d 66. *Bailey v. State* (1982), Ind., 440 N.E.2d 1130.

In the case at bar, the trial court—inherently ruling that PC2 applies to cases in which a PC1 petitioner failed to timely file a motion to correct error regarding the court's decision on his PCI petition—held Roarks had met requirements (a) and (c) above, but ruled that Roarks had not demonstrated by a preponderance of the evidence that his failure to file a timely motion to correct error was not due to his own fault. The question of fault must be determined on a case by case basis. *Zellers v. State* (1979), 271 Ind. 22, 389 N.E.2d 299.

We turn now to the specific arguments raised by Roarks.

### I. *Effective Waiver of Counsel*

Roarks first claims the trial court's denial of his petition for permission to file a belated motion to correct error is contrary to law because he "was denied counsel when the trial court failed to inform him of the dangers and disadvantages of proceeding *pro se* on his petition for post-conviction relief." The State responds that Roarks voluntarily, knowingly, and intelligently waived his right to counsel. We agree.

 It is the duty of the trial court to establish a record which shows that an accused who has elected to waive counsel and proceed *pro se* has done so voluntarily, knowingly, and intelligently. *Mitchell v. State* (1981), Ind.App., 417 N.E.2d 364. To discharge the duty imposed, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. *Id.* The record must show that Roarks not only knew about the right to counsel, but also understood the "nature, extent, and importance of the right and the possible consequence of waiving it." *Hardison v. State* (1985), Ind.App., 485 N.E.2d 133.

---

**2.** We note neither party has raised or addressed this issue before the trial court or in their respective appellate briefs.

■ Here, the court questioned Roarks before the post-conviction hearing regarding his choice to proceed *pro se* and again at the post-conviction relief hearing. The court was aware that Roarks had filed, with the assistance of inmate Gary Wayne Taylor, a petition for post-conviction relief, a motion for self-representation, a motion for supplemental filing, and a motion for rights to be preserved on January 14, 1985. Since that time, Roarks had filed or written, with only his own signature and no notation of assistance, a motion to amend petition for post-conviction relief, a memo in support of post-conviction relief, two letters to the court clerk, a motion for request of movement of prisoner, and a motion for default judgment. The combination of (1) the court's questioning; (2) Roarks' signed assertion, contained in his motion for self-representation, that he was aware of the extent and importance of the possible consequences of proceeding *pro se;* and (3) solo preparation of several later pleadings, is sufficient evidence within the record to support the trial court's conclusion that Roarks voluntarily, knowingly and intelligently waived his right to counsel. We agree with the trial court's conclusion that Roarks effectively waived counsel and chose to represent himself.

## II. *Equal Protection*

Roarks next claims he was not at fault for failing to timely file a motion to correct error after his PC1 petition was denied because the trial court "never advised him how to appeal from an adverse ruling on his *pro se* petition and he was not otherwise aware." Roarks concedes that there is no statutory or case law requirement that the trial court provide these advisements to PC 1 petitioners. However, Roarks notes that our courts have consistently held that defendants inadequately advised at their original sentencing, under Indiana Rules of Criminal Procedure, Rule 11, on how to perfect their direct appeals are not deemed at fault for missing their deadlines. Roarks claims no rational reason exists for providing less consideration to *pro se* defendants in post-conviction proceedings than to defendants on direct appeal. Roarks contends that because post-conviction relief is the only method of appellate review available to those convicted upon guilty pleas, treating Roarks differently from defendants on direct appeal under C.R. 11 without a rational reason would deny those defendants who plead guilty equal protection of the law as guaranteed by our federal and state constitutions. *See, Decision, supra.*

The State responds that "the trial court was under no duty to advise Roarks how to appeal an adverse decision on his petition to file a belated motion to correct error and lack of notice of an adverse decision does not require an extension of time." The State does not directly address Roarks' equal protection claim in its appellee's brief.[3]

3. The State notes that C.R. 11 specifically refers to the time immediately following sentencing and that Roarks is now "years and appellate stages past that specific time". The State also argues that Indiana Rules of Trial Procedure, Rule 72(D) permits the trial court to retain its discretion in deciding whether to extend filing deadlines even when good cause has been shown. Rule 72(D) states:

"(D) Notice of Orders or Judgments. Immediately upon the entry of a ruling upon a motion, an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing. Such mailing is sufficient notice for all purposes for which notice of the entry of an order is required by these rules; but any party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers. Lack of notice, or the lack of the actual receipt of notice of the entry by the clerk shall not affect the time within which to contest the ruling, order or judgment, or authorize the court to relieve a party of his failure to initiate proceedings to contest such ruling, order or judgment, except in the following instances: wherever the mailing of the notice by the clerk of the ruling, order or judgment is not evidenced by a note made by the clerk upon the docket, and no other court record affirmatively shows that such notice was actually mailed by the clerk, the court, upon application for good cause shown, may grant an extension of any time limitation within which to contest such ruling, order or judgment to any party who was without actual knowledge, or who relied upon incorrect representations by court personnel. Such extension shall commence when the party first

Roarks cites three cases in support of his argument that this court should extend the C.R. 11 requirement that the trial court adequately advise defendants at sentencing on how to perfect a direct appeal to require the trial court to adequately advise *pro se* defendants in post-conviction relief proceedings on how to appeal an adverse decision: *Gallagher v. State* (1980), Ind., 410 N.E.2d 1290; *Brandon v. State* (1976), 264 Ind. 177, 340 N.E.2d 756; and, *Blackmon v. State* (1983), Ind.App., 450 N.E.2d 104.

In *Gallagher, supra,* our supreme court reversed the trial court's denial of Gallagher's consolidated post-conviction relief (rule 1 and rule 2) petitions. Gallagher pled not guilty and was then tried by jury and found guilty of second degree murder. Gallagher was sentenced to life imprisonment but the sentencing hearing record was incomplete and did not affirmatively show Gallagher was advised of his right to appeal, the procedures necessary to perfect an appeal, or the availability of counsel for appeal. These advisements were and are required under Criminal Rule 11 for defendants who have pled not guilty. The supreme court found Gallagher had been diligent in perfecting his appeal, despite the nine year delay between his trial and the filing of his first PCR petition, because the record supported Gallagher's claims of (1) limited education and mental ability, (2) lack of required advisements on appeal, and (3) Gallagher's confusion about the significance of his trial counsel's filing of a motion for new trial. Gallagher further argued that no transcript of his trial was available and therefore the proper remedy was a new trial. The supreme court agreed, finding (1) Gallagher had been unconstitutionally and statutorily deprived of his right to direct appeal, (2) no transcript was available, and (3) no reconstruction of the record was possible, so Gallagher was entitled to a new trial.

In *Brandon, supra,* our supreme court held that the defendant, who pled not guilty and was convicted by jury of second degree murder, was entitled as a matter of law to file a belated motion to correct error where no timely motion to correct error had been filed, defendant had not been informed by the trial court of his right to appeal under Criminal Rule 11, and the defendant had demonstrated diligence. The supreme court found the evidence fairly and clearly established each of the three elements required by P.C. 2, § 1. Like Gallagher, Brandon had been denied his right to direct appeal because the trial court did not advise him of his right to appeal, the procedures necessary to perfect an appeal or to secure counsel as required by Criminal Rule 11.

In the third case cited by Roarks, *Blackmon, supra,* the defendant pled not guilty to forgery and theft and was convicted by the court. The trial court informed Blackmon that he could appeal his sentence, but failed to inform him that he could appeal the judgments against him. The court found that informing a defendant of his right to appellate review of his *sentence* does not satisfy C.R. 11 which requires informing the defendant of his right to appeal the *judgment of conviction* rendered against him because these rights are distinct legal rights. Again, *Blackmon* was decided under Criminal Rule 11 where the defendant had been denied his right to direct appeal.

█ The three above cases cited by Roarks stand for the proposition that trial courts are required to follow C.R. 11 at the time of sentencing. By its own terms, C.R. 11 applies only to those defendants who have pled not guilty and are later convicted. Criminal Rule 11 does not apply to

obtained actual knowledge and not exceed the original time limitation. Service by mail upon any attorney who is present at the time the entry is made of record shall not be required if such fact is noted in the docket by the clerk.

It shall be the duty of attorneys when entering their appearance in a cause or when filing

pleadings or papers therein, to have noted on the bench docket or on said pleadings or papers to be filed, their mailing address, and service by mail at such address shall be deemed sufficient."

Given our disposition of Roarks' equal protection argument, we need not respond to the State's contentions under Rule 72(D).

defendants who have pled guilty and later bring PCR petitions.

■ Roarks establishes two classes of persons for his equal protection argument: (1) those defendants who plead not guilty, are convicted, and at sentencing are required by C.R. 11 to be informed of their right to direct appeal; and (2) those defendants who plead guilty, thereby waiving C.R. 11's required advisements, are convicted, and later attempt to set aside the conviction. We note that the defendant is present at his sentencing hearing when the sentence decision is made and when C.R. 11 advisements are required to be given. However, PCR petitioners are present only at PCR hearings. The trial court may only take evidence and generally defers its ruling until a later time when the defendant is not necessarily present in court. To require the trial court to give the defendant advisements concerning appeal and the availability of counsel at the PCR hearing would be premature, before the court has actually ruled on the PCR petition. This would be analogous to requiring the trial court to advise the defendant, who pleads not guilty, of his appellate rights before the defendant has been convicted.

We see the two classes of persons to be compared quite differently. Roarks' argument fails when we compare the trial court's responsibility to all PCR petitioners. The trial court is not required to inform or to advise any PCR petitioner of his appellate rights, regardless of whether the petitioner has pled guilty or not guilty at trial. Absent the promulgation of a rule establishing such a requirement, we conclude Roarks' equal protection argument must fail.

### III. *Due Process*

■ Roarks' final argument is that the denial of his PCR petition violates due process because Roarks has a fundamental right to demonstrate that this conviction is invalid and was later used erroneously in recidivist proceedings. Roarks was found to be a habitual offender in 1981 and the instant conviction underlies this habitual offender finding. Roarks argues that refusing him permission to test the constitutional validity of the instant conviction because he missed a filing deadline of which he was unaware would improperly deny his due process right to test the underpinnings of the 1981 habitual offender finding.

The State responds that due process requires that all parties act promptly and diligently in bringing matters before the court and that Roarks' due process rights were disturbed by his own failure to act promptly. In other words, the State argues correctly that due process rights may, under some circumstances, be waived. The State cites *Cheney v. State* (1986), Ind. App., 488 N.E.2d 739 in support of its position.

In *Cheney*, the defendant pled guilty to entering to commit a felony in 1973 and received a suspended sentence. After Cheney was found guilty of an unrelated offense in 1983, he was sentenced to an additional thirty years as a habitual offender. Cheney filed a PCR petition in 1984 challenging his 1973 conviction on grounds the trial judge had failed to advise him of his constitutional rights and their waiver before accepting his guilty plea at the 1973 hearing. The State raised laches as an affirmative defense and the trial court denied Cheney's petition. On appeal, Cheney contended that he had an absolute right to challenge his 1973 guilty plea. Judge Robertson, writing for the court, explained:

"... (Cheney) argues that laches cannot be a defense to a petition for post-conviction relief consistent with due process, where the State 'resurrects' the infirm conviction to prove the defendant's status as an habitual offender. Cheney has not cited any authority directly on this point, and we find none that would support defendant's contention that due process requires that a petition for post-conviction relief must be granted even when the petitioner has knowledge of the infirmity and has acquiesced over time in the deprivation of his constitutional rights, and the State is prejudiced thereby. *See* generally *Frazier v. State,* (1975) 263 Ind. 614, 335 N.E.2d 623. Indeed, due process requires that all parties act promptly and diligently in bringing matters before the court. *Callahan v.*

*State,* (1966) 247 Ind. 350, 214 N.E.2d 648. Cheney's contention that notions of finality are inappropriate in criminal cases is unsupported and meritless. *Id.* at 356, 214 N.E.2d at 652."

*Cheney, supra,* 488 N.E.2d at 740.

Here, the trial court denied Roarks' petition because Roarks had failed to show he was not at fault for failing to timely file a motion to correct error. In other words, the trial court found Roarks had not been diligent in bringing his motion to correct error before the court. The evidence shows that while it may have been periodically difficult for Roarks to pursue filing his motion to correct error, it was not impossible. As the trial court noted, the several general and personal administrative lockdowns during the time between the court's decision and the filing of the petition, Roarks did not lose his mail privileges, his ability to communicate with other inmates, or his ability to request the assistance of counsel. The evidence supports the trial court's finding that Roarks was not diligent. We find no support for Roarks' contention that he has an absolute right to appeal the 1977 forgery conviction which underlies the habitual offender finding. We also find no violation of Roarks' due process rights.

Affirmed.

ROBERTSON and CONOVER, JJ., concur.